Martin *vs.* Broach and others.

No. 3.—Eliza J. Martin, plaintiff in error, *vs.* Robert M. Broach, executor, and Rachel Broach, executrix of Geo. Broach, deceased, defendants.

[1.] The 17th section of the 1st art. of the State Constitution, inhibiting the passage of any law, by the Legislature, containing any matter different from what is expressed in the title, does not require that the title should set forth a synopsis of the entire Act.

[2.] Where the title specifies some of the objects for which the Statute was passed, and contains this general clause—" And for other purposes therein contained," portions of the Act not specially indicated in the title, are, nevertheless, good, under this general clause.

[3.] Where letters testamentary, have been revoked under the Act of 1834, on account of the birth of a posthumous child, and an intestacy declared, neither by the Common nor Statute Law of England, nor the Acts of our own Legislature, can the newly appointed administrator be made a party defendant to a suit pending against the removed executor.

[4.] An acknowledgment, or promise, to take a case out of the Statute of Limitations, must specify, or plainly refer to the particular debt, or demand, or cause of action, which is sought to be revived.

[5.] Where there is any dispute, as to the facts which go to prove the making of a new promise, then, whether a sufficient acknowledgment, or promise, has been made, to take the case out of the Statute, is a mixed question of Law and fact, to be passed upon by the Jury ; but where the facts are undisputed, it is for the Court to determine whether they take the case out of the Statute or not.

[6.] A promise to pay a debt, barred by the Statute, constitutes a new cause of action which, a party seeking to avail himself of, must declare upon, in the words in which it was made, or according to its legal effect. The old debt is regarded as the consideration, which supports the promise ; and in declaring, must be set out as the inducement to it.

Assumpsit, &c. in Pulaski Superior Court.    Tried before Judge Scarborough, October Term, 1848.

John Martin died testate, and his will was duly proven, and George Walker qualified as executor under the same. Suit was brought against him, as such. The birth of a posthumous child, revoked the said will, which was so declared by the proper Court, and the letters testamentary to Walker, annulled. Eliza Martin, having qualified as administratrix, a *scire facias* issued, to make her a party defendant to the said suit ; to which she pleaded, that she should not be made a party to the said suit in Pulaski Coun-

ty, " because, she says that there is no privity in Law, between said George Walker, as executor of said will, and herself, as administratrix. And because, said John Martin died in Bibb County, where her letters were granted, and where she resided at the time of the service of said *scire facias*, and still resides." At the September Term, 1848, of said Court, the Court overruled the several pleas, and ordered the said administratrix to be made a party.

The case was called in its order, and the parties proceeded to trial, upon the three pleas of—Non-Assumpsit, Payment and the Statute of Limitations.

The following is the account sued upon :

Mr. John Martin, Dr.

To George Broach.

| | | | | |
|---|---|---|---|---|
| 1833. | Nov. 1. | To 1 two-horse wagon, | $70 | 00 |
| " | " | To purchase price of negro, Mary, | 150 | 00 |
| 1835. | May 10. | To ten bales cotton, (say 3500 lbs. at 16 cts. per lb. | 560 | 00 |
| 1836. | Feb. 9. | To proceeds James C. Averey's note, | ·485 | 00 |
| " | Dec. 2. | To cash received for sale of negro man, Peter, | 1700 | 00 |
| " | " | To 1 beef cow, | 20 | 00 |
| " | " | To 20 bushels corn, $1 per bushel, | 20 | 00 |
| 1837. | May 10. | Cash received of Robert Martin, on sale of my cotton, | 500 | 00 |
| 1838. | April 16. | Cash received from Benjamin Lettle, on sale lot of my cotton, | 118 | 46 |
| 1839. | | Cash advanced per contract, | 1500 | 00 |
| " | | Cash collected on a note in my favor, of Mathis D. Cannon, | 30 | 00 |
| " | Dec. 27. | 50 bushels corn, at $1 per bushel, | 50 | 00 |
| | | | $5203 | 46 |

The plaintiff proposed to prove, by one Hardy Morris, a subsequent promise, by the intestate of the defendant, to pay the amount sued for, after the bar of the Statute of Limitations had attached; to which defendant, by her counsel, objected, because the declaration in the case contained no count upon any new promise or acknowledgment, by Martin, nor averment of any kind, in the pleadings, so as to authorize the introduction of the testimony ; which objection was overruled by the Court, and the testimony admitted.

Morris testified, that he " met Martin on Cotton Avenue, Ma-

con, in February before he died, who had business in the Court of Ordinary, Jones County, and asked witness what time the Court of Ordinary sat—said he wanted to go over to Jones, by 1st March thereafter, and wanted to settle up the business with George Broach; witness remarked to Martin, he ought to do so, and pay him the money—for old man Broach was in need of money. Martin said he would do so, for he promised his sister to go over and do so. Knew of no other matters between the parties, except those involved in this suit."

The plaintiff offered, in evidence, a receipt of John Martin, dated the 3d of February, 1836, for James C. Averey's note, dated 9th February, 1836. Also, a receipt, dated 16th April, 1838, for $118 46, of Benj. Lettle, on account of George Broach's cotton. Also, $500 of Robert Martin, on account of cotton; to which defendant's counsel objected, because they were barred by the Statute of Limitations, before the commencement of the suit; which objection the Court overruled.

The testimony being closed, the counsel for defendant requested the Court to charge the Jury—

1. That there is no evidence, or testimony, in this case, going to show, that either the plaintiff's testator, or John Martin, defendant's intestate, were merchants, or persons engaged in the trade of merchandize, or factors, or servants; all the items of the account, are therefore not taken out of the Statute of Limitations, by the proof of one on which the Statute had not attached.

2. That after an account, or demand, has been barred by the Statute of Limitations, that any acknowledgment to remove the bar, or take the case out of the Statute, should contain a direct and unqualified admission of a previous subsisting debt, due to George Broach, which he was liable and willing to pay.

3. That a promise to pay, in order to take the case out of the Statute of Limitations, must be proved, in a clear and explicit manner, and the promise must be, in its terms, unequivocal and determinate.

The Court charged the Jury, among other things, that "The Statute of Limitations does not constitute an absolute or total bar to the action. It only suspends the remedy, after the lapse of the statutory time, until the justness of the original demand is acknowledged, or a new promise to pay is made, which revives the remedy.

"I take the law to be this: that a debt, barred by the Statute of Limitations, may be revived by a new promise; that such promise is express or implied; that an implied promise is created from a *clear, positive* and unqualified admission of the justness of the debt, or demand sued for." "The acknowledgment which is sufficient to take the case out of the Statute of Limitations, is a clear, positive, unequivocal and determinate admission of the original justness of the particular debt, or demand sued for, and that the same is still due, or has not been paid. When such an acknowledgment is proved, to the satisfaction of the Jury, then, a new promise is implied, springing out of, and supported by, the original consideration, and the remedy revived."

The Jury found a verdict for the plaintiff; whereupon, counsel for the defendant moved the Court for a new trial.

1. For, that the verdict is contrary to law.

2. For, that it is contrary to evidence, and without sufficient evidence.

3. Because, the Jury have found, contrary to the charge of the Court, and in disregard of its instruction, as to what was sufficient to constitute a sufficient acknowledgment and promise, to take a demand without the operation of the Statute, where it had attached.

4. Because the Court erred in allowing plaintiff to introduce evidence of a new promise, by Martin, to take the case out of the Statute of Limitations, when there was no count or allegation in plaintiff's declaration, under which said evidence could be received.

5. Because the Court erred in charging the Jury, that they might find for the plaintiff, if they believed, from the evidence, that Martin had made a clear, positive, unequivocal and determinate admission of the original justness of the particular debt, or demand sued for; and that the same is still due, and had not been paid, when there was no evidence from which the Jury could draw such a conclusion, or inference, or ought to have been permitted to draw one.

Which motion for a new trial, was refused by the Court.

All of which rulings and decisions of the Court, were severally assigned to be erroneous.

I. L. HARRIS and C. B. COLE, for plaintiff in error.

POWERS, BAILEY & BLAKE, for defendants.

I. L. HARRIS, for plaintiff in error, submitted the following points and authorities:

No privity at Common Law; between administratrix and executor. 1 *Kelly*, *Hardwick's case*. 2 *Kelly*, *Broach vs. Walker*.

For definition of privity, see *Greenleaf's Ev.* 220. 1 *Taunt.* 141. *Tomlin's Law Dic.* It consists in the transmission of same duties and powers.

The Acts of 1810 and 1821, do not change the common principle. This is a *casus omissus*, which the Court *cannot* supply. 1 *Term R.* 52. *Dwarris on Statutes*, 70.

Incompetency of Morris.

Error in admission of testimony, as to *new* promise, without a count in declaration, to support it. *Aycourt vs. Cross*, 3 *Bing.* 329, 365. 11 *Eng. Common Law.* Also, *Miller vs. McIntire*, 6 *Peters*, 64.

Error in not giving instructions prayed. *Law vs. Morrel*, 6 *Wend.* 268. *Powers vs. McFerron*, 2 *Serg. & Rawle*, 44. 7 *Cranch*, 506. *Elling vs. Bank U. S.* 11 *Wheat.* 75. *Graham on New Trials*, 270. *Bradstreet vs. Huntington*, 5 *Peters*, 402.

It is error to leave matter of law to the Jury, as matters of fact. 2 *Serg. & Rawle*, 415.

So, also, to submit a mixed question of law and fact to the Jury. *Graham on New Trials*, 270. *Clarke vs. Dutcher*, 9 *Cowen*, 674, 530.

So, also, to declare a question of law, to be a question of fact. *U. S. vs. Carlton*, 1 *Gall.* 400.

So, also, when there is no evidence to prove a particular fact, for the Court not so to instruct the Jury, when required. *Greenleaf vs. Birth*, 9 *Peters*, 292.

Examine the words relied on, to establish a promise—the word settle does not mean to pay, in any one of its senses.

No promise is made, to pay any fixed or determinate debt, or sum of money. This is essential, according to *Stafford vs. Bryan*, 3 *Wend.* *Bell vs. Morrison*, 1 *Peters*. *Moore vs. Bank of Columbia*, 2 *Peters*.

The case of *Bell & Morrison*, *(1 Peters,)* if law, and it is be-

lieved to be, shows that the Court, throughout its charge, erred, and that it submitted questions to the Jury, which should have been decided by it.

S. T. BAILEY, for defendant, contended—

1st. That under a fair and equitable construction of the Acts of 1810 and 1821, the plaintiff in error was properly made a party, and cited—*Dwarris*, 618, 704, 718, to 721.   6 *B. & C.* 178.   8 *Ib.* 104.   15 *Serg. & Rawle*, 39.

2d. That the promise proved, is sufficient to take the case out of the Statute of Limitations, and cited 4 *Pick.* 110.   3 *McCord*, 552.   4 *Ib.* 215.   2 *Nott & McC.* 60.   3 *Conn.* 370.   6 *N. H. R.* 367.   1 *Esp. Ca.* 435.   32 *E. Com. Law*, 366.   4 *Mason*, 457.   4 *Porter*, 223.   1 *Har. & Gill*, 204.   2 *Green. Ev.* §441.   5 *C. Law*, 245.

Whether the promise removes the bar, is a question for the Jury.   8 *Eng. Com. Law*, 318, 501.   32 *Ib.* 366.   11 *Ib.* 59.   2 *T. R.* 760.   3 *N. H. R.* 467.   *Chit. Cont.* 818.   2 *Greenleaf's Ev.* §442.

3d. A new promise need not be pleaded.   3 *Conn. R.* 131.   1 *Har. & Gill*, 204.   4 *Wash. C. C.* 149.   3 *Ib.* 404.   *Chit. Cont.* 821, *note.*

C. B. COLE, in conclusion, for plaintiff in error, contended—

1st. That the suit abated, and the Acts of 1810 and 1821, construed according to the meaning of their words, which are plain and unambiguous, do not authorize the plaintiff in error to be made a party, and cited—1 *Term*, 52.   6 *Barn. & Cress.* 475, 712.   7 *Ib.* 560.   4 *Nev. & Man.* 460.   8 *B. & C.* 104, 160.   10 *Ib.* 520.   17 *Wend.* 304.   21 *Ib.* 211.   7 *Cranch*, 52.   *Dwarris*, 44.   6 *Mod.* 143.   1 *Wash. C. C. R.* 463.

2d. A *casus omissus* cannot be supplied by construction. *Dwarris*, 53.   1 *Term*, 52.   6 *East*, 514.

3d. The new promise was no where alleged, and the acknowledgment proved, was not sufficient, and cited—1 *Peters*, 362.   6 *Ib.* 151.   12 *Ib.* 332.   2 *Saund.* 127, *and note c.*   2 *Greenl. Ev.* 354.   3 *Wend.* 532.   9 *Ib.* 293.   2 *Paige Ch.* 45.

One item within the Statute, will not draw to it, items barred.

Martin *vs.* Broach and others.

8 *Pick.* 187.   6 *Ib.* 362.   5 *Cranch*, 15.   7 *Ib.* 350.   5 *Mason*, 505.   1 *Hill's S. C. R.* 202.   2 *Greenl. Ev.* 360.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The first question to be considered, is, was Mrs. Martin, as the administratrix generally, of the estate of John Martin, deceased, such a successor to George Walker, who qualified as executor upon the will of said deceased, but whose letters testamentary were revoked, and the will set aside, on account of the birth of a posthumous child, as that she could be made a party to the suit, pending against Walker, as executor, at the instance of the estate of George Broach, deceased ?

It is clear, that this could not be done at Common Law, or under the Statutes of 17 *Car. II, or,* 1 *Jac. II,* for want of privity of representation.   Do the Acts of 1810 or 1821, either or both of them, make provision for this case ?

[1.] It is suggested, by counsel for the plaintiff in error, that these Acts contravene the 17th section of the 1st article of the Constitution of the State, which inhibits the passage of any law, or ordinance, containing any matter different from what is expressed in the title thereof. *Prince,* 904.   The origin and history of this singular provision, are given in the case of *The Mayor and Aldermen of the City of Savannah, and others, vs. The State of Georgia, &c.* 4 *Georgia R.* 26.   This clause does not require that the title should contain a synopsis of the Law, but that the Act [2.] should contain no matter *variant* from the title.   Now, the titles to each of these Statutes, after enumerating certain objects for which they were passed, adds, " *And for other purposes therein mentioned.*"   This was sufficient to prevent surprise—to induce the members, either to call for the reading of the *whole* of the bill, or to look into it, during its progress through the Legislature.

Having disposed of this preliminary objection, we will proceed to an examination of the Statutes.

[3.] The Act of 1810, declares that " the Court of Ordinary shall have power and authority, upon complaint made, and cause shown, by any security of any administrator or guardian, that his principal is mismanaging his estate, upon which he is the administrator or guardian, to pass an order requiring such administrator or guardian, to show cause, if any they have, at the next term,

why such security should not be discharged from his securityship, and such administrator or guardian, compelled to give new security, or their administration or guardianship be revoked, as to the said Court shall seem expedient; and upon the revocation of such administration, *or upon the revocation of any letters testamentary, as provided by law,* and granting administration, *de bonis non,* suits brought by, or against, the former administrator, shall not, for this cause, be abated; but the removal of such administrator or executor, being suggested on record, a *scire facias* may issue, to make such administrator, *de bonis non,* a party, at any time after the granting of such letters, *de bonis non. Prince,* 241.

The Act of 1821, is declaratory of the Act of 1810, doubts having arisen as to its proper construction. It says—" That from and after the passage of this Act, when the Court of Ordinary shall know, or be informed that any such guardian, executor or administrator, shall waste, or in any manner mismanage the estate of such orphan, or deceased person, or does not take due care of the education and maintenance of such orphan, or *deceased person (!!!)* according to his, her or their circumstances; or where such guardian, executor or administrator, or his, her or their securities, are likely to become insolvent; or where such executor, administrator or guardian, shall fail to make returns within the terms prescribed by law—particularly, where no inventory or appraisement shall have been made and returned, in terms of the law—said Court are hereby required to order a rule to be served on such guardian, executor or administrator, so in default, returnable to the next regular term of said Court after the passing the same; and upon return of said rule being served, the Court shall proceed to investigate all the actings and doings of said guardian, executor or administrator, (as the case may be,) and may, and are hereby authorised and empowered to revoke the trust confided to him, her or them, or pass such other, or further order, as said Court may think expedient and fit for the better managing and securing such estate, and educating and maintaining such orphan; and upon the revocation of such letters testamentary, letters of administratorship, or guardianship, writs, by or against either, shall not, for this cause, abate; but the removal being suggested of record, a *scire facias* may issue, to make the successor of such removed person a party, at any time after the appointment and qualification." *Prince,* 245, '6.

Martin *vs.* Broach and others.

It will be discovered that the Act of 1810 makes provision for the appointment of a successor, " upon the revocation of any letters testamentary, as provided by law." And this clause would, of itself, be sufficiently broad to embrace this case ; for here, the letters testamentary of Walker were revoked, as provided for by law, viz : under the Statute of 1834, requiring the Court of Ordinary to declare an intestacy, in certain cases. *Prince,* 454. Yet the *whole* Statute *must* be taken together. And the fatal defect is, that in conclusion, as will be seen by its careful perusal, it restricts the appointment of a successor *to an administrator, de bonis non.* And Mrs. Martin, who was made a party defendant, by order of the Court, is neither in form, according to her letters, nor in fact, an administratrix, *de bonis non,* of her deceased husband. On the contrary, she is, to all intents and purposes, an *original* administratrix, *generally,* on this *now* intestate estate, between whom and Walker, the late executor, there is no privity.

When *this* cause *was* up before, the query was propounded by the Judge, who delivered the opinion of the Court, whether the Act of 1821 would not reach the present case ? 2 *Kelly,* 439. We are now satisfied that it does not. For, while it authorizes the *successor* of a removed executor to be made a party by *scire facias,* and might, therefore, in terms, apply to Mrs. Martin ; yet, it is qualified and restrained, by referring to the successors of *defaulting* executors and administrators, and such as were removed for some breach of trust, or official misconduct ; whereas, Walker's *letters were recalled for no delinquency on his part,* but the will itself was set aside, and an intestacy declared, there being an after-born child, for which no provision was made.

It is no doubt the policy of the law, to prevent delay and expense in the administration of justice. And to secure this most desirable end, we might feel disposed to put a liberal construction upon the Statutes which have been invoked in this discussion, and to hold that, although the Act of 1810 mentions suits only, " brought by, or against, the former *administrator,*" yet it shall apply to *executors* likewise. But we entertain great doubt, whether, upon principle, the administratrix in this case, should be made a party to the suit hitherto pending against the executor. Suffice it to say, however, that there is no authority of law to warrant it.

[4.] Was the case properly submitted to the Jury, by the pre-

siding Judge? There must be a clear and unequivocal acknowledgment of the debt, to take the case out of the Statute of Limitations. No set form of words are required for the purpose. It may be inferred from facts, without words; as, for instance, the payment of a part of the debt, or giving security for the whole, or a part thereof, within the period limited by the Statute. But whatever acknowledgment is relied on, in order to create an implied promise, it should show that the party considered himself *liable to pay*, at the time of making it. Was, then, the conversation between John Martin and Hardy Morris, the witness, sufficient to take the case out of the Statute? What was that conversation, as testified to? Martin expressed a desire to settle with Broach; Morris replied, that he ought, and to pay the money, for that Broach was needy; Martin declared that he would, having promised his sister, (Broach's wife,) to do so.

It will be borne in mind, that the account sued, consists of a great variety of items, beginning in 1833, and continuing down to December, 1839; and in their character, wholly disconnected; as, for the sale of property and produce, cash advanced, money collected, &c. amounting, altogether, to $5,203 46. Did the promise to *settle*, apply to the whole, or a part only, of this indebtedness? And if the latter, to which particular items? To take the case out of the Statute, the acknowledgment must clearly refer to the very debt in question between the parties.

Says Mr. Justice Sutherland, in delivering the opinion of the Court, in *Stafford vs. Bryan, (3 Wend. 535,)* "It will be observed that neither of the witnesses pretend that the note in question, or any note, was mentioned by the defendant, or expressly alluded to, by him. He only admitted, in general terms, that he owed the plaintiff a large sum of money, without specifying how. The evidence shows that there was, at the time, an unliquidated account, of long standing, and to a considerable amount, between the parties, to which the defendant may have referred, if indeed, he made the declaration imputed to him. An acknowledgment which is to have the effect of taking a stale demand out of the operation of the Statute of Limitations, ought to be clear and explicit, in relation to the subject, or demand, to which it refers."

And to the same effect, in *Lockhart vs. Eaves, (Dudley's S. C. R.* 321,) Judge *Butler* said—"From the whole complexion of this case, it is not one which deserves the countenance and fa-

Martin *vs.* Broach and others.

vor of the Court. It is founded on a stale demand. The acknowledgment and promises made by the intestate, in 1833, were not sufficient to obviate the operation of the Statute, and to impose a new obligation, without specifying some particular demand, or cause of action, intended to be renewed, or created by them. This may be done, as well by satisfactory reference, as by explicit terms. In neither of these ways did the intestate indicate the particular demand, which, it was said, he assumed to pay. The acknowledgment imposing the obligation, should also have showed the demand upon which it was founded, so that the Court might have pronounced upon its effect and validity."

We are of the opinion, that the acknowledgment in the present case, was not sufficient to obviate the Statute of Limitations, inasmuch as it failed to specify, or plainly to refer to any particular demand, or cause of action, to be renewed or created by it.

[5.] What, then, was the duty of the Court, under the circumstances? The rule we take to be this—where there is any dispute, as to the facts which go to prove the making of a new promise, then, whether a sufficient acknowledgment, or promise, has been made, to take the case out of the Statute, is a mixed question of law and fact, to be passed upon by the Jury. But when the facts are undisputed, it is for the Court to determine whether they take the case out of the Statute, or not. *Graham on New Trials,* 271. 9 *Cowen,* 674. 15 *Vermont,* 563.

Here, it is not denied that Martin made the statement relied upon as evidence of the acknowledgment of the debt. Whether, therefore, it amounted to a sufficient acknowledgment, or not, was an unmixed question of law, and should not have been referred to the Jury, to be determined by them.

[6.] But in the third, and last place, we are called on to consider, and settle, one of the most vexed questions in the books, and one of great importance to the profession and the country— viz : is the old debt, or the new promise, the cause of action? Were I disposed to be laconic, I might content myself, by suggesting that this Court considers and adjudges, that the Statute of Limitations *is an Act of the Legislature,* and *as such,* ought to be carried fully into effect. It will be expected, however, that we should submit, more at large, the reasons which have conducted us to the conclusion that the suit and recovery must be on the *new* promise, and not on the *old* debt.

In the first place, it is abundantly sustained by the most respectable authority.

Chief Justice *Marshall*, in *Wetzell vs. Bussard*, (11 *Wheat.* 314,) remarks that, " some of the American cases proceed on the idea of a new promise, for which the ancient debt is a sufficient consideration ; and this is a distinction of great importance, where the acknowledgment is connected with any thing required of the defendant."

Mr. Justice *McLean*, in *Ames & Ames vs. Le Rue*, (2 *McLean's R.* 216,) says—" The Statute of Michigan does bar all the remedy upon the special contract.   Since the breach of the contract, and before the commencement of this suit, the limitation of the Statute has run, and consequently, the bar is complete. . . . . The special contract, in regard to the sale of the machine, is properly shown as the consideration of the express promise. . . . And we think the plaintiffs have a right to recover, on the express assumpsit, since which, the Statute has not run, and that the whole circumstances of the case may be gone into, to show the amount due."

I would observe, that the opinion, that the Statute of *Michigan* " does bar all remedies upon the special contract"—that is, the *original liability*—is not founded upon the peculiar phraseology of the Statute of that State, but upon general principles, as will appear by reference to the Act itself.   It simply declares that, " all actions of debt, founded on contracts not under seal ; and all actions of assumpsit, or on the case, founded on any contract or liability, express or implied, shall be commenced in two years next after the cause of action shall accrue, and not afterwards.   *Ang. on Limit.* 2 *Ed. Appendix*, *CXXVII.*

*Spencer, J.* in delivering the opinion of the Supreme Court, in *Sands vs. Gelston*, (15 *Johns.* 519,) says—" The Statute of Limitations is the law of the land ; and, as has been frequently observed, was intended as a shield against stale and dormant demands, under the benign supposition that the party may have lost the evidence necessary to his defence, by the lapse of time.   I could never see the difference, as regards the revival of a debt, between one barred by the Statute of Limitations, and one from which the debtor has been discharged, under the Bankrupt, or Insolvent Laws.   The remedy is equally gone, in both cases.   The Statute of Limitations requires all actions, on contract, to be com-

Martin *vs.* Broach and others.

menced within six years next after the cause of such action accrued, and not after. The remedy being suspended after six years, there yet exists a moral duty, on the part of the debtor, to pay the debt; and, accordingly, a promise to pay a debt not extinguished, but to which the remedy is lost, is a valid promise, and may be enforced, on the ground of the pre-existing moral duty. There is, then, no substantial difference between a debt barred by the Statute of Limitations, and a debt from the payment of which the debtor is exonerated, by a discharge under a Bankrupt or Insolvent Act. Both of them rest on the same principle.

Since the argument of this case, I have had the good fortune to find a decision, from the Court of Appeals of our next-door neighbor, so full and so satisfactory, that I shall gladly avail myself of it, to save much useless labor. And I do this the more willingly, as the opinion of the Court was delivered by that eminent jurist, and most excellent man, Judge *O'Neall*, of whom it may be justly said, that his official worth would be more highly appreciated, were it not, in some degree, obscured by his private virtues.

" In deciding upon the Statute," say the Court, " no mere rule can be more universal, than that it is the duty of the Courts to expound it as it is, and not as we might think it should be. The Statute of Limitations has been, for a long series of years, the subject of eulogy or blame, by the different persons who have been called on to discuss it, as fancy or the circumstances of the case dictated. Generally, however, in all modern cases, it has been regarded by the ablest judges and soundest lawyers, as founded on a wise policy, *and to be sustained and enforced, according to its letter, and not frittered away by distinctions unauthorized by its provisions.* It is a little remarkable, that in the variety of decisions on the Statute of Limitations, in relation to the actions of debt, on simple contract and assumpsit, until very recently, how completely its provisions have been overlooked. Any thing which admitted that a debt ever had an existence, was held to be enough to take a case out of the Statute of Limitations. This capricious, and I might say, dangerous current of decisions, has at length been arrested, and the Judges of the Courts of the United States, of this State, New York, Pennsylvania and England, have, about the same time, abandoned the rules of previous decisions, and have returned to the Statute, to ascertain on what cases it shall, or shall not, operate as a bar."

Martin *vs.* Broach and others.

"The Statute (*P. L.* 102) directs that the action of debt, on simple contract and assumpsit, shall be brought "within four years next after the cause of said action or suit, and not after." The words of the Statute are of plain and obvious meaning, and to give it effect, only two questions need be asked. When did the cause of action accrue? Is the suit brought within four years from the accrual of the cause of action? In all cases where there has been no intervening disability, the answers to these questions would enable us, at once, to say whether the bar of the Statute precluded the plaintiff's recovery, or not. When did the cause of action accrue? is always to be answered by ascertaining when could suit have been brought upon it. In assumpsit and debt, upon simple contract, this is ascertained from the time the debt fell due; consequently, upon that is the right to demand payment, and of course to sue, (if not paid.) If more than four years intervenes between the time at which the party, by his contract, has the right to demand the payment, and the institution of the suit, the bar of the Statute is complete and effectual, and the cause of action is gone. But the old debt, as a past consideration, will support a new promise, for notwithstanding it cannot be legally enforced as a cause of action, yet, if it has not been paid, the party who contracted it, is in honesty, which is but another name for one branch of good morals, bound to pay it. This obligation of honesty and morality, is a good consideration, and the new promise founded upon it, will be enforced; but it is a new cause of action, not as the revival of the old one; for if not regarded as a new cause of action, the words of the Statute would prevent it from enabling the party to recover. Regard it as a new contract—a new cause of action, and the case is not affected by either the intent or the words of the Statute. This plain, but I think, obviously correct exposition of the Statute, makes it easily understood, and easily to be applied to all future cases."

"The only reason which can be assigned, why it was ever supposed that the old debt, and not the new promise, was the cause of action, is, that in counts in *indebitatus assumpsit*, or on a note or bill of exchange, the precedent indebtedness in the first, the making of the note, the drawing, accepting or indorsing the bill in the second, and the consequent liability to pay, is stated as the consideration of the legal assumpsit laid. In it, the true time is wholly immaterial, and of course, every promise between the

Martin *vs*. Broach and others.

suing out of the original writ, can be given in evidence, as between the parties to the contract; hence, the new promise being received, in actions of this kind, as corresponding with the *allegata*, it was easy to suppose and conclude, that the old debt was revived, and was the cause of action.   This view, too, was much encouraged by many loose expressions of that kind, to be found in the opinions of some of the most learned Judges." *Reigne, assignee, &c. vs. Ex'r of Desportes, Dudley's S. C. R.* 118.

The Judge then enters upon the review of many cases, English and American, from which it appears, and such is his own conviction, that the recent decisions of the English Courts of King's Bench and Common Pleas, whatever may have been the previous adjudications, settle the rule, that the new promise, and not the old debt, is the cause of action ; and that the cases in this country conclusively establish the same proposition.

Mr. *Angell*, after reviewing the decisions and judicial reasoning, upon new promises and acknowledgments, in the cases adjudicated in the Supreme Court of the United States, of Pennsylvania, New York, Massachusetts, Maine, Connecticut, New Hampshire, Vermont, Virginia, Maryland, Delaware, North Carolina, South Carolina, Kentucky, Tennessee, Illinois, Missouri and Alabama, thus sums up the result, as being fully established, both in England and in this country—1st. That a debt, barred by the Statute of Limitations, may be revived by a new promise.   2d. That such new promise may either be an express promise or an implied one.    3d. That the latter is created by a clear and unqualified acknowledgment of the debt.    4th. That if the acknowledgment be accompanied by such qualifying expressions or circumstances, as repel the idea of an intention or contract to pay, no implied promise is created.    The point to be resolved, in all cases, is whether the acknowledgment, or promise, is a mere continuation of the original promise, grounded upon presumption of payment, or whether it is a *new* contract, springing out of, and supported by, the original consideration.    *It clearly appears, both upon principle and authority, that it is the latter ;* and the decisions of all the Courts throughout the country, are remarkably uniform in so establishing it.   *Ang. on Lim.* 245.

So much for authority.   How stands the case upon principle and policy ?   The Judiciary Act of 1799, requires the plaintiff, " plainly, fully and distinctly," to set out in his declaration his

Martin *vs.* Broach and others.

cause of action. Does the plaintiff, who sues on a contract barred on its face, and who expects to recover on an entirely new and distinct agreement, comply with this salutary enactment? Does he exhibit a plain view to his adversary of what he expects to prove on the trial? So far from conveying correct information on the subject by the action, or precise knowledge of the plaintiff's demand, it does not really give the slightest hint of the true ground of the suit. As well might the writ be as it originally was, in French or Latin, or any other strange and unknown tongue. It has been well and truly said, "that whenever the parties fight each other by trick, on the record in the first instance, fencing to evade telling their grounds of contention, they renew the fight afterwards, by perjury, in the Court."

Everything intended to be proved, should be stated in the pleadings, and then the parties, knowing the evidence on which the respective statements must be established, would have an opportunity of examining into the character of the testimony, and of procuring the best evidence to elucidate the issue, and to rebut the proof of their adversary. Judge *Blackstone* closes his account of special pleading, with an eloquent panegyric upon " the *care* and *circumspection* of the law, in providing, that no man's right shall be affected by any legal proceeding, *without giving him previous notice.*" 3 *Com.* 423.

But, in conclusion, I would ask, is not the very language of the Statute obligatory upon the Courts, as to this point? It declares, " that all actions founded upon open account, shall be commenced within four years from the time such account accrued, (*fell due,*) *and not afterwards.*" *Prince,* 578. By what authority, I would most respectfully ask, shall this, or any other Court, undertake to decide, in utter defiance of this Act, that suit may be commenced and recovered, on an open account, more than four years after the cause of action has accrued thereon?

I trust that the period is passed for judicial legislation, under the pretext of *construction.* It is the monster mischief of the law, the prolific source of that uncertainty with which it has been so long and so deservedly reproached. If the Legislature has seen fit to declare that suits shall be brought on a certain class of contracts, within a specified time after the right to do so accrues, and *not thereafter,* the pathway of duty for the Courts is plain, and

should be straightforwardly pursued; and that is, obedience to the behest of the sovereign power.

If, then, four years elapse after the cause of action accrues, on an open account, there can be no recovery thereon; still, the debt is not *extinguished*; it remains due in *conscience*, and the moral obligation to pay, is a good consideration for the new promise. It remains, in some respects, due *in law*, too; for if the defendant omits or declines to plead the Act of Assembly, he is to be considered as having waived the benefit of it, and the plaintiff may recover against him.

On these principles, I rest my opinion that the plaintiff in error is entitled to a reversal—and such is the opinion of the Court.

Judgment for the plaintiff.