## CORENBLUM *v.* THE STATE.

That part of section 34 of article 20 of the act approved August 16, 1919 .(Georgia Laws 1919, p. 135), entitled an act to regulate banking, etc., which declares that " Any person who, with intent to defraud, shall make, or draw, or· utter, or deliver any check, draft, or order for the payment of money upon any bank, or other depository, knowing at the time of such making, drawing, uttering, or delivery that the maker or drawer has not sufficient funds in or credit with such bank, or other depository, for the payment of such check, draft, or order in full upon its presentation, shall be guilty of a misdemeanor," is unconstitutional, because it violates the provision of the constitution of Georgia contained in article 3, section 7, paragraph 8, of the constitution (Civil Code, § 6437), in that it contains matter different from what is expressed in · the title of the act.

No. 2973. JUNE 14, 1922.

Accusation of fraud in bank check. Before Judge Rourke. City court of Savannah. October 29, 1921.

*John R. Fawcett* and *Paul Fusillo,* for plaintiff in error.

*Walter C. Hartridge, solicitor-general,* and *McIntire, Walsh & Bernstein,* contra.

BECK, P. J. In an accusation duly filed in the city court of Savannah against M. Corenblum it was charged in the· second count (the first count having been stricken upon demurrer) that the accused did, unlawfully and with intent to defraud a named individual, make, draw, and utter a certain check upon the Mercantile Bank and Trust Company, the same being a bank and trust company organized and existing under the laws of the

State of Georgia, the check being made payable to a named payee; and it was also charged that the defendant knew, at the time of such making, drawing, and uttering of the check, that he had not sufficient funds in or credit with the bank for the payment thereof in full upon presentation. This second count of the indictment was demurred to upon several grounds, among others, that it charged a violation of section 34 of article 20 of the act approved August 16, 1919, entitled an act to regulate the banking business, etc. (Georgia Laws 1919, p. 135). The demurrer was overruled, and to this judgment the defendant excepted. The defendant was adjudged guilty; he made a motion for a new trial, which was overruled, and the case was brought to the Supreme Court for review.

The title of the act referred to in the foregoing statement of the facts reads as follows: " An act to regulate banking in the State of Georgia; to create the Department of ·Banking of the State of Georgia; to provide for the incorporation of banks, and the amendment, renewal, and surrender of charters; to provide penalties for the violations of laws with reference to banking and the banking business; and for other purposes." This act to regulate banking in the State of Georgia is quite lengthy; it contains 20 articles, and many of these articles contain numerous sections. The subject of these numerous articles is clearly within the purview of the act as indicated by the title; but we are to consider especially section 34 of article 20, the constitutionality of which is challenged on the ground that it contains matter different from what is expressed in the title of the act. Section 34 of article 20 embraces the provision of the statute alleged to have been violated by the defendant. In part that section reads as follows: "·Any person who, with intent to defraud, shall make, or draw, or utter, or deliver any check, draft, or order for the payment of money upon any bank, or other depository, knowing at the time of such making, drawing, uttering, or delivery that the maker or drawer has not sufficient funds in or credit with such bank, or other depository, for the payment of such check, draft, or order in full upon its presentation, shall be guilty of a misdemeanor." It is charged in the indictment that the accused did make and utter a check upon a stated bank, without having funds or credit there sufficient for the payment of the same, with intent to defraud a named party,

such party not being a bank or banking corporation. The provision in this statute making it broad enough to cover such transactions does not seem, giving to the words of the title of the act their ordinary meaning, without restricting or extending the scope of the meaning of the terms employed in the caption, to have been within the purview of the caption; and the matter of the special section just referred to is different from what is expressed in the title of the act. It is true, as has been frequently held in cases decided by this court, that great latitude has been left to the General Assembly in determining what is germane to a general purpose indicated in the title of an act. Latitude in this respect is allowed to such an extent that matters contained in the act which are related only remotely to the general purpose of the act as indicated in the title are held to be germane to that purpose, and the act not unconstitutional on the ground that it contains matter different from what is expressed in the title. *Welborne* v. *State,* 114 *Ga.* 793 (40 S. E. 857). A title to an act which reasonably expresses the general subject of legislation covers all matters properly connected with the general subject and germane thereto. The clause of the constitution under consideration does not require that the title should contain a synopsis of the law, but the act should contain no matter at variance with the title. *Martin* v. *Broach,* 6 *Ga.* 21 (50 Am. D. 306); *Howell* v. *State,* 71 *Ga.* 224 (51 Am. R. 259). And it seems to us that the matter contained in section 34 of article 20, which we have quoted above, is not germane to the purpose of the act as indicated by the caption. A law to regulate banking, to create the department of banking, to provide for the incorporation of banks, and the renewal and surrender of charters, to provide penalties for the violation of laws " with reference to banking and the banking business," are the terms used to show the purpose of the act; and there does not seem to be a reasonable connection between the imposition of a penalty for the giving of a check by one individual to another and the broad, general purpose of the act in question. The reasoning and the ruling made in the case of *Hawkins* v. *State,* 146 *Ga.* 134 (90 S. E. 968), seem to be applicable to the question now under consideration. There is a clear analogy between the principle of that case and the controlling principle here, and for that reason we make a lengthy extract from the case, and the decision of the

question there renders more elaborate discussion here unnecessary. One of the questions decided in that case is, whether section 3 of the act of 1913 (Georgia Laws 1913, p. 98), which purports to regulate and control certain insurance companies, is unconstitutional on the ground that it contains matter different from what is expressed in the title of the act; and in the decision it is said: " The title to the act of 1913 (Acts 1913, p. 98) is as follows: ' An act to better regulate and control the organization and operation of corporations (foreign and domestic) doing an industrial, health, life, or accident insurance business in the State of Georgia, and to provide penalties, and for other purposes.' Section 3 of the act provides: ' That no person shall knowingly or wilfully make or aid in making of any false or fraudu'ent statement or representation of any material fact or thing in any written statement or certificate for the purpose of procuring or attempting to procure the payment of any false or fraudulent claim . . or aid in the making of any false or fraudulent statement in any application for insurance, or as to the death or disability of the policy or certificate-holder, . for the purpose of fraudulently obtaining any money or benefit from any such insurance company or fraternal or benefit association licensed to do business in this State.' The act referred to contains six sections. The first, second, and fourth sections relate to officers and agents of certain insurance companies or associations doing business in this State, and specify what acts on their part are prohibited. Sections two and five provide for the punishment, as a misdemeanor, of certain acts. Section six defines the powers of the insurance commissioner and his deputies. Section three of the act does not refer in terms, or otherwise, to the acts of insurance companies, their officers or agents, but expressly declares ' That no person shall knowingly or wilfully make or aid in making of any false or fraudulent statement,' etc., for the purpose of procuring or attempting to procure the payment of fraudulent claims against insurance companies. This language is broad enough to include all outside persons, and can not have reference to the regulation of the class of corporations designated in the act. The act deals with the regulation, control, and operation of corporations, and also undertakes to regulate, control, and punish outside persons for fraudulent acts injurious to such companies. It requires no demonstration to show that section

three of the act under review contains matter different from what is expressed in the title of the act. From a careful reading of the title and that section of the act, it is apparent that section 3 has reference to outsiders who make or aid in making fraudulent claims against insurance companies in the manner pointed out, while the title only covers the subject of regulation and control of the organization and operation of certain corporations." In the present case we reach the same conclusion that was reached in the case from which the foregoing quotation is taken. It follows, therefore, that the judgment of the court below, overruling the demurrer to the accusation and holding that that portion of the act under consideration was not unconstitutional, was erroneous, and must be reversed. *Judgment reversed. All the Justices concur.*