WILSON *et al.*, administrators, *v.* SUPREME FOREST WOODMEN CIRCLE.

1. Section 17 of the act of 1914 (Acts 1914, pp. 99-110) is not unconstitutional because in violation of article 3, section 7, paragraph 8, of the constitution of this State, on the ground that this section contains matter different from what is expressed in the title of the act; nor is said section of said act in violation of article 1, section 1, paragraph 3, of the constitution of this State, which provides that "No person shall be deprived of life, liberty, or property, except by due process of law;" nor is said section of said act unconstitutional because it violates article 1, section 1, paragraph 2, of the constitution of this State, which provides that "Protection to person and property is the paramount duty of government, and shall be impartial and complete."

2. The sixth and seventh grounds of demurrer can not be sustained; it not being true, as a matter of law, that there is a discrimination in behalf of domestic societies as against foreign societies.

3. The garnishee not having been served with a summons of garnishment in this case in accordance with the provisions of section 17

of the act of 1914, the garnishee did not have its day in court, and the judgment rendered against it is void for that reason.

4. The above rulings render it unnecessary to consider the other grounds of demurrer.

5. The court did not err in overruling the demurrer to the petition in this case.

No. 3494. September 14, 1923.

Petition to set aside judgment. Before Judge Harper. City court of Americus. September 2, 1922.

*R. L. Maynard,* for plaintiffs in error.

*Ellis, Webb & Ellis,* contra.

Russell, C. J. We shall first consider the ruling of the court upon the fourth and ninth grounds of the demurrer, in which the question of the constitutionality of section 17 of the act of 1914 (Acts 1914, p. 99-110) is involved. This for the reason that if the act is unconstitutional, the validity of the service as set forth in the record (and asserted to be invalid) would be next considered; and if on the other hand the act is constitutional, the ruling of the lower court upon the demurrer is necessarily right for the reason that the foregoing act prescribes that " Legal process shall not be served upon any such society except in the manner provided herein."

1. The contention that section 17 of this act is unconstitutional is based upon three propositions: first, that the caption does not include the subject-matter involved in the 17th section of the act, and is therefore violative of article 3, section, 7, paragraph 8, of the constitution. The caption is as follows: " An Act for the regulation and control of all fraternal benefit societies; to prescribe their admission into this State; the amount of license fee for each society; how they may be excluded from the State; and for other purposes." Plainly stated, the first position is that the matter of service of judicial process is not included in the meaning of the words " regulation and control." It seems to me that an act the purposes of which are thus stated would only include acts of the society or fraternity in carrying on its own business, — a regulation and control of the acts of the society or insurer alone, and would not include regulation of any acts of an adverse party in a proceeding *against* it. The method of service of process might and would be a species of regulation, but would it be a regulation of the business of the society? The business of the society is to write insurance and to pay the policy upon the compliance upon the

part of those it insures with the contract of insurance. This view would seem to find support in the ruling in *Hawkins* v. *State,* 146 *Ga.* 134 (90 S. E. 968), in which Mr. Justice Hill, delivering the opinion of the court, said that " Section 3 of the act of 1913 (Acts 1913, p. 98), which purports to regulate and control certain insurance companies, is unconstitutional as being in violation of art. 3, sec. 7, par. 8, of the constitution of this State, which declares that no law shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." " The title to the act of 1913 (Acts 1913, p. 98) is as follows: ' An act to better regulate and control the organization and operation of corporations (foreign and domestic) doing an industrial, health, life, or accident insurance business in the State of Georgia, and to provide penalties, and for other purposes.' Section 3 of the act provides: ' That no person shall knowingly or wilfully make or aid in making of any false or fraudulent statement or representation of any material fact or thing in any written statement or certificate for the purpose of procuring or attempting to procure the payment of any false or fraudulent claim against any such insurance company or fraternal or benefit association, and no person shall make any false or fraudulent statement in any application for insurance, or as to the death or disability of the policy or certificate holder, for the purpose of fraudulently obtaining any money or benefit from any such insurance company or fraternal or benefit association licensed to do business in this State.' " As to this, Justice Hill speaking for the court says: " Section three of the act does not refer in terms, or otherwise, to the acts of insurance companies, their officers or agents, but expressly declares ' That no person shall knowingly or wilfully make or aid in making of any false or fraudulent statement,' etc., for the purpose of procuring or attempting to procure the payment of fraudulent claims against insurance companies. This language is broad enough to include all outside persons, and can not have reference to the . . . class of corporations designated in the act. . The act deals with the regulation, control, and operation of corporations, and also undertakes to regulate, control, and punish outside persons for fraudulent acts injurious to such companies. It requires no·demonstration to show that section three of the act under review contains matter different from what is ex-

pressed in the title of the act. From a careful reading of the title and that section of the act, it is apparent that section 3 has reference to outsiders who make or aid in making fraudulent claims against insurance companies in the manner pointed out, while the title only covers the subject of regulation and control of the organization and operations of certain corporations. The one can not be included in the other, and each refers to separate subject-matters. We think, therefore, that section three of the act is repugnant to the latter clause of paragraph eight of section 7 of article three of the constitution of this State, which provides that no law shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof."

It was held in *Corenblum* v. *State,* 153 *Ga.* 596 (113 S. E. 159), that " That part of section 34 of article 20 of the act approved August 16, 1919 (Georgia Laws 1919, p. 135), entitled an act to regulate banking, etc., which declares that ' Any person who, with intent to defraud, shall make, or draw, or utter, or deliver any check, draft, or order for the payment of money upon any bank, or other depository, knowing at the time of such making, drawing, uttering, or delivery that the maker or drawer has not sufficient funds in or credit with such bank, or other depository, for the payment of such check, draft, or order in full upon its presentation, shall be guilty of a misdemeanor,' is unconstitutional, because it violates the provisions of the constitution of Georgia contained in article 3, section 7, paragraph 8, of the constitution (Civil Code, § 6437), in that it contains matter different from what is expressed in the title of the act." In this case Mr. Justice Beck, speaking for the court, said : " And it seems to us that the matter contained in section 34 of article 20, which we have quoted above, is not germane to the purpose of the act as indicated by the caption. A law to regulate banking, to create the department of banking, to provide for the incorporation of banks, and the renewal and surrender of charters, to provide penalties for the violation of laws ' with reference to banking and the banking business,' are the terms used to show the purpose of the act; and there does not seem to be a reasonable connection between the imposition of a penalty for the giving of a check by one individual to another and the broad, general purpose of the act in question.

The reasoning and the ruling made in the case of *Hawkins* v. *State,* 146 *Ga.* 134 (90 S. E. 968), seem to be applicable to the question now under consideration. There is a clear analogy between the principle of that case and the controlling principle here." But it is true, as ruled by Justice Beck in the *Corenblum* case, " that great latitude has been left to the General Assembly in determining what is germane to a general purpose indicated in the title of an act. Latitude in this respect is allowed to such an extent that matters contained in the act which are related only remotely to the general purpose of the act as indicated in the title are held to be germane to that purpose, and the act not unconstitutional on the ground that it contains matter different from what is expressed in the title. . . A title to an act which reasonably expresses the general subject of legislation covers all matters properly connected with the general subject and germane thereto. . . *Martin* v. *Broach,* 6 *Ga.* 21 (50 Am. D. 306); *Howell* v. *State,* 71 *Ga.* 224 (51 Am. R. 259)."

While primarily and prima facie I was inclined to hold section 17 of the act now under consideration to be unconstitutional, I yield to the suggestion of my colleagues that from the provision of section 17 a purpose to protect the societies and fraternities in their business is inferable, in return for the requirements as to registration, the appointment of the insurance commissioner as their agent to accept service in their behalf, etc., which brings the provisions of section 17 within the meaning of the words "the regulation and control of all fraternal benefit societies," as contained in the caption. We therefore hold that the trial judge did not err in overruling the demurrer of the plaintiff in error as contained in section (b) of demurrer number 4.

2. In the fifth paragraph of the demurrer of the defendant (now plaintiff in error) it is insisted that section 17 of the act of 1914, supra, contravenes and is in violation of article 1, section 1, paragraph 3, of the constitution, which provides that " No person shall be deprived of life, liberty, or property, except by due process of law." It is insisted by demurrer "that under section 17 of said act it is provided that the only way legal process may be served upon such society is by the service of the insurance commissioner, who, under the terms of said act, is coercively appointed by said society attorney in fact. This is true even if the

said society is a domestic organization, and even though the principal office of said society is in the State of Georgia. That substituted service as is provided in section 17 of said act affords due process only in instances where service can not be perfected upon the party sought to be served because of non-residence in the State." In our opinion the provisions of section 17 of the act of 1914, supra, do not deprive any person of any of the rights provided by article 1, section 1, paragraph 3 (Civil Code of 1910, § 6359), of the constitution of this State. It does not contravene any provision of law, and all rights under the law are preserved. Nothing is done except that the mode of service is changed. It is permissive for the societies mentioned in the act of 1914, supra, to do business in the State of Georgia upon complying with the law, and all persons dealing with such societies are charged with knowledge of the law. It is clearly within the authority of the legislature to prescribe the mode of service, and the provision of the constitution as to due process of law upon this subject is not violated thereby. The mode of perfecting service was changed for the protection of such fraternal benefit societies. The failure of persons serving as officers of local lodges to send to the proper officers of such societies copies of processes and suits filed against these societies frequently deprived such societies and their members of their property rights, by depriving them of the opportunity to defend. The insurance commissioner of the State must be recognized as being a person well versed in insurance law, and service upon such a person as attorney in fact for fraternal benefit societies tends to protect the property rights of such societies. It must also be presumed that the insurance commissioner of the State would not be as much affected by consideration of local interests as would have been the result had the law required that service should be made upon the local representative interested more or less in his fellow members in a local lodge. It is within the police power of the State to regulate service upon all persons of a class, which from its nature will prevent imposition and fraud from being perpetrated upon them.

3. The sixth ground of the demurrer can not be sustained, because it is not true as a matter of law, as stated in this portion of the demurrer, that there is a discrimination in favor of domestic societies as against foreign societies, or vice versa; because the

purpose of the act as stated in the caption is plain — " the regulation and control of all fraternal benefit · societies." The word " all " includes alike both foreign and domestic fraternal benefit societies, and the section itself declares " every society, whether domestic or foreign," etc.

4. The seventh ground of the demurrer is subject to the same defects pointed out in the sixth division of the demurrer.

5. Having decided that the provisions of section 17 of the act of 1914 (Acts 1914, p. 99) are not for any reason assigned unconstitutional, it necessarily follows that there was no legal service of the summons of garnishment in this case. Without service, the garnishee in the court below (defendant in error) never had its day in court, and the judgment rendered upon the garnishment was void for that reason; and a decision of the merits of the court's rulings upon other grounds of the demurrer could serve no useful purpose. We need only to say, in passing, that under the provisions of § 5598 of the Civil Code of 1910, that " When a plaintiff in any cause now or hereafter pending shall die, the executor or administrator of such plaintiff may be made party on motion, to be made in writing, of which the defendants or their counsel shall have notice," there were really no proper plaintiffs at the time the judgment was rendered by the city court of Leesburg, because it must be admitted for the purpose of demurrer that the garnishee was never notified even of the grant of such order, although the law requires that he should have been given notice of the *application* to make parties, and that without such notice an order making parties is void.

There was no error in overruling any of the demurrers to the petition of the defendant in error; and the judgment of the lower court must be

*Affirmed. All the Justices concur, except Gilbert, J., dissenting.*