## 23120. DRISKELL v. THE STATE.

DECIDED OCTOBER 20, 1933.

*Joe Hill Smith,* for plaintiff in error.
*Robert McMillan, solicitor-general,* contra.

MACINTYRE, J. Clyde Driskell was convicted under an indictment charging that the accused, "with intent to defraud H. H. Rogers," did "make, draw, utter, and deliver a certain check . . for the payment of . . $15, same bearing date of the 1st day of November, 1931, upon the Citizens Bank, same being a bank and depository in this State, the said defendant knowing at the time of such making . . and delivery of said check . . that he, the said defendant, the maker and drawer, had not then and there sufficient funds in or credit with said bank . . for the payment of said check . . in full upon its presentation."

In the first place, we hold that there is no merit in the motion to dismiss the bill of exceptions; and we overrule the motion.

Since the brief of counsel for the plaintiff in error neither in-

sists upon nor mentions any question sought to be raised in the record except that the verdict was "contrary to the evidence," we shall confine ourselves to the general grounds of the motion for a new trial. The State introduced in evidence the check described in the indictment, with the notation "insufficient funds" thereon. H. H. Rogers, the prosecutor, sworn for the State, testified: "The defendant . . issued and gave me this check in this case in Hall county on the 1st day of November, 1930. The defendant and I had been in the automobile repair business together, and this check represented what he owed me. It was given me on Saturday afternoon, and I, in turn, indorsed it over to Hubert Vickers. On . . November 3, 1930, the check was placed by Vickers in another bank at Gainesville, and in due course was presented to the bank upon which it was drawn, and there was not sufficient funds with which to meet it upon presentation. It has never been made good, and I had to pay Vickers for it." The foregoing was all the evidence adduced by the State. Clay Driskell, sworn for the defendant, testified: "that he was present when H. H. Rogers and the defendant, his brother, entered into the agreement of partnership, and . . that the agreement was that they were to do automobile repairs, and that Driskell, the defendant, was to receive money and pay over to H. H. Rogers his part of the money when the money was collected." The gist of the defendant's statement to the jury was: "H. H. Rogers and I entered into a partnership agreement to do automobile repairs, and I was to receive the money and pay him for his part of the money when it was collected. Some few days after . . we had dissolved the partnership Rogers came back to me and said he had to have some money to purchase some groceries. I told him I did not have any money, and he asked me to give him a check for $15. I told him I did not have any funds in the bank and that my check would not be good. He said that was all right—he could use it with his grocer and take it up when it came back, and took the check under the representations made by me that I had no money in the bank. I did have money in the bank at the time I gave the check and for several days afterwards, but I knew that I had several other obligations that had to be met and I could not cover this check at the time, and only gave it to him with the understanding that it would not be presented to my bank until some time in the future."

The defendant also introduced in evidence a statement of his bank account with the Citizens Bank, from which it appears that on November 1, 1930, he had on deposit in said bank $76.61; that on November 4, 1930, his balance was $18.71; that on November 5, 1930, his balance was $13.71; and that on November 6, 1930, his balance was only 77 cents.

The indictment in this case was drawn under the "bad-check law" of 1924 (Ga. L. 1924, p. 194), which declares "that any person who, with intent to defraud, shall make, or draw, or utter, or deliver any check, draft or order for the payment of money upon any bank, or other depository, knowing at the time of such making, drawing, uttering, or delivering that the maker or drawer has not sufficient funds in or credit with such bank, or other depository, for the payment of such check, draft, or order upon its presentation, shall be guilty of a misdemeanor. The making, drawing, uttering, or delivering of such check, draft, or order as aforesaid shall be prima facie evidence of intent to defraud. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depository for the payment of such check, draft, or order." The foregoing act is practically a reenactment of section 34 of article 20 of the act of 1919 (Ga. L. 1919, p. 135), which was declared unconstitutional in *Corenblum* v. *State*, 153 *Ga.* 596 (113 S. E. 159), because "it contains matter different from what is expressed in the title of the act." In *Berry* v. *State*, 153 *Ga.* 169 (111 S. E. 669, 35 A. L. R. 370), the defendant was tried under the act of 1919, and the evidence showed that the check in question was given solely for a past-due loan, under the statement of the defendant that he had the money in the bank. In the *Berry* case this language appears (p. 174): "By giving this check the defendant did not obtain from the payee any money, property, or other thing of value. He did not deprive the payee of any right. Bank checks are not payment until themselves paid. Civil Code, § 4314. The acceptance of this check by the payee did not amount to a novation of the original contract. The purpose of the defendant in giving this check was not to deprive the payee of any right, money, property, or other thing of value, and he did not intend to defraud the payee in giving the same. His evident purpose was to escape the importunate duns of his creditor and to get a temporary respite therefrom." The decision concludes as follows:

"The evidence for the State disclosing that there was no intent to defraud the payee of any right, property, money, or other thing of value, the defendant should not have been convicted, although he falsely stated before he gave his check that he had put funds in the bank to meet the same. The court erred in not granting a new trial."

It will be observed that the uncontradicted testimony of the prosecutor was: "The defendant and I had been in the automobile repair business together, and this check represented what he owed me." To our minds, this testimony strongly tends to show that the check was given for a past-due indebtedness; and this view is strengthened when Rogers' testimony is considered in the light of that of the defendant's witness Clay Driskell. At any rate, there is nothing in the record which either shows, or tends to show, that in giving the check the defendant either deprived or intended to deprive the prosecutor of any right, money, property, or other thing of value. The intent to defraud was not shown, and the evidence does not support the verdict. We hold that the trial judge committed reversible error in overruling the general grounds of the motion for a new trial. See *Berry* case, supra.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*