| 32 | 119 |
| 129 | 73 |

## WALKER, EX'R, vs. GRIGGS.

1. The subsequent promise to take a case out of the statute of limitations, must specify, or plainly refer to the particular demand or cause of action, to be renewed or created by it.
2. Where the promise relied on refers to notes generally, without specifying amounts, dates, etc., the promise is insufficient.
3. If the plaintiff, to identify the note sued upon, as the subject of the written promise, introduces other proof which fails to satisfy the jury on this point, this Court will not interfere to control their finding, although the Court may be of the opinion that the *aliunde* testimony preponderated against the conclusion of the jury; especially when the party sought to be charged is a surety, and the debt has been barred, as to him, for many years.

Assumpsit, in Webster Superior Court. Tried before Judge PERKINS, at the September Term, 1860.

This was an action, brought by John H. Walker, as executor of Joel Walker, deceased, against James Griggs, to recover the amount of a promissory note, made by James A. Merriwether, as principal, and James Griggs, as security, payable to the said Joel Walker, or bearer, dated the 23d of December, 1840, due the 25th of December next thereafter, for $2,653 52, with interest from date, if the principal should not be punctually paid.

There were also counts in the declaration, alleging a new promise to pay the note, which new promise was embodied in certain letters hereinafter set forth.

The defendant resisted a recovery by the plaintiff, on the ground that the note sued on had been paid, and also that the plaintiff's cause of action, if any, was barred by the statute of limitations.

On the trial of the case in the Court below, the following testimony was adduced, to-wit:

### *Evidence for the Plaintiff.*

The original note, of which the following is a copy, with the credits thereon, all of which credits were proven to be in the handwriting of James A. Merriwether, except the last one, which was proved to be in the handwriting of J. Adams, administrator of James A. Merriwether:

"By the 25th of December next, we, or either of us, promise to pay Joel Walker, or bearer, twenty-six hundred and fifty-three 52-100 dollars, with interest from date, but, if the principal is punctually paid, the interest to be remitted.

"JAMES MERRIWETHER.

"JAMES GRIGGS, Security.

"23d December, 1840."

"Received, $135.00, May 1, 1845.

"Received, $98.23, July, 1845.

"Received, $138.55, February 12, 1849.

"Received, seven hundred and fifty dollars, May 28th, 1851.

"Received, of J. Adams, administrator of J. A. Merri-

wether, deceased, the sum of fourteen hundred and fifty-four 29-100 dollars, in full of the amount decreed to be paid to this note, by said administrator, and in full of the estate in the hands of said administrator; said decree rendered at April Term, 1856, of Putnam Superior Court.

JOHN H. WALKER, Adm'r.

" October 1st, 1856."

An original letter, of which the following is a copy, to-wit:

EATONTON, GA., February 6, 1857.

"*James Griggs, Esq.:*

" DEAR SIR : Mr. John H. Walker not having come here as I expected, I have not seen him in reference to the note you left with me on Mr. Wesley Griggs to sell to Walker. I received your message, through Mr. Gatewood, to sell the note to any one else, and not wait for Walker. I saw Mr. Cullen Reed; he may take it at 10 per cent. off, if he can raise the money—promised to see me again about it. If he will take it at that rate, it will be about the best that I can do for you. Nothing definite having been done by you in reference to paying the notes, Mr. Walker holds the late Judge Merriwether and you as his security. I thought it best to write to you about the same, before they were put in suit. The decree passed at last September Court, directing what amount was to be paid by me as administrator of Judge Merriwether on said claims, in full of all the estate of Judge Merriwether in my hands—the balance falls on you. The papers will have to be sued, if a definite arrangement is not shortly made to prevent it. I will write to Mr. Walker to-day. How would it suit you to pay the note on Mr. Wesley Griggs on these notes, and give your note for the balance, and get indulgence from Walker for the balance, and also get him to indulge you on the *fi. fa.?* Or, if Walker is willing—and I think he ought to be—for you to give your note for the unpaid balance on these notes, on which you are security for Judge M., and give you further indulgence. As it is, I feel bound to write to Walker about the notes, and see what direction he will give in the business. If you and he

had met here, you might have made some arrangement about these papers, but, he not coming, and you leaving before the business was adjusted, leaves me only where Walker put me when he desired the notes to be sued for the unpaid balance. Be pleased to answer this on receipt of it that I may know what to depend upon, otherwise, unless Walker gives a different direction, the papers will have to be put in suit. I hope it will meet Walker's views to give you further indulgence, but that is between you and him. He wanted the papers sued to March Court next, for the unpaid balance, and hence I write, in order to know what shall be done.

"Respectfully,                    J. ADAMS."

An original letter, of which the following is a copy, to-wit:

"PRESTON, 10th February, 1856.

" *J. Adams, Esqr.:*

"DEAR SIR: I have just received yours of the 6th. I regretted very much my not seeing Mr. Walker in Macon. He had just left. I wrote to him from there to be certain to meet me in Eatonton at March Court, that I was very anxious to see him, and try to make some arrangements with him in the notes of Judge Merriwether, without suit. I believe I can give him satisfaction without suing, for I am truly tired of paying cost and being sued. I would rather. greatly, settle the matter without further expense. The money, raised from the note on Wesley, that is in your hands, will all be paid to John H. Walker's claims; but I have promised Wesley that the last note shall go to the payment of the *fi. fa.* that is open against him, which I believe to be just. I, perhaps, will bring some money with me when I come to Putnam; if so, it will be paid on the Merriwether note. I will pay as fast as I can, without suit, you may rely on it. Write to Walker, and try to have the receipt for Carswell & Floyd's note credited on the Branham & King *fi. fa.*; thus, there will be more money to spare for the Merriwether notes. Please ascertain what is due on that *fi. fa.* against I come up. Mr. Davis has Mr. Walker's receipt for the note. Do what

you can for me, and it will be highly appreciated by a friend. Let me hear from you.

"JAMES GRIGGS."

The Acts of the General Assembly of the State of Georgia, showing that the name of Kinchafoonee county was changed to that of Webster, and that of the town of McIntosh to that of Preston, on the 21st of February, 1856.

James J. Scarborough testified: That, on the trial of this case once before, James Griggs, in response to a notice to produce the letter of J. Adams to him, dated 6th of February, 1856, testified that he never received a letter of that date, and had never received but one letter from said Adams on the subject of the Merriwether notes, and that was dated 6th of February, 1857, to which the letter sued on was in reply.

Here the plaintiff rested.

### EVIDENCE FOR THE DEFENDANT.

An original note, of which the following is a copy, to-wit:

"$500.    By the 25th December next, we, or either of us, promise to pay Joel Walker, or bearer, five hundred dollars, for value received, with interest from date.

"J. A. MERRIWETHER,
"JAS. GRIGGS, Security.
"March 19th, 1851."

On this note the following credits were endorsed, to-wit:

Paid, by J. Adams, as administrator of Merriwether, $206.52, in full of its *pro rata* share of the assets in his hands.   1 October, 1856.

Paid in full by James Griggs.   16 March, 1857.

A writ of *fieri facias*, issued from the Superior Court of Putnam county, in favor of Henry Branham and Jesse King against James Griggs, dated the 2d of October, 1846, and founded on a judgment obtained on the 25th of September,

1846, for $3,995.47, principal; $239.71 interest up to the judgment, and $7.37½ for cost.

On said *fi. fa.* the following entries and credits were endorsed, to-wit:

"We assign, transfer, and give control of this *fi. fa.* to Joel Walker, for value received, without recourse on us.

"HENRY BRANHAM,
"JESSE KING.

"17 March, 1847."

"Received, of James Griggs, four hundred and seven dollars and 62 cents on this *fi. fa.*

S. A. WALES, Pl'ff's Attorney.

"17th March, 1847."

"Received, 1st March, 1853, five hundred dollars on this *fi. fa.*

"Received, of James Griggs, by the hand of J. Adams, the sum of one thousand dollars, in part payment of this *fi. fa.*

"May 1, 1854. JOHN H. WALKER,
Ex'r of Joel Walker."

"Received of the within *fi. fa.*, four hundred and nine 38-100 dollars, this January 3d, 1855.

"JOHN H. WALKER,
"Ex'r of Joel Walker."

"Received of the within, sixteen hundred and fifty dollars. January 10, 1856.

"Received of James Griggs, defendant, the sum of nine hundred dollars in part payment of this *fi. fa.*

"J. ADAMS,
"Att'y for J. H. Walker, Ex'r."

"March 20, 1856.

"Received of defendant, James Griggs, by the hand of C. D. Pearson, four hundred and fifty-two dollars on this *fi. fa.*

"J. ADAMS,
Att'y for J. H. Walker, Ex'r."

"March 22d, 1856.

" Received of James Griggs, hereon, the sum of five hundred dollars.    January 28, 1857.

"J. ADAMS,
" Att'y at Law of J. H. Walker, Ex'r."

· " Received of James Griggs, the sum of fifteen hundred and seventy-one dollars and 55 cents, a part of the money arising from the sale of a note by me, for him, on Wesley Griggs, to Alexander Reid, payment in full of the balance due on this *fi. fa.*    March 16, 1856,

"J. ADAMS,
" Att'y at Law for John H. Walker,
" Ex'r of Joel Walker, deceased."

" Received from James Griggs, seven dollars and 37 cents, the cost of this *fi. fa.*

"J. NICKOLSON, Clerk."

There were also two levies on said *fi. fa.*, one on a house and lot in Eatonton, as the · property of defendant Griggs, dated 1st February, 1855 ; the other on seven hundred acres of land lying on Murder creek, in Putnam county, as the property of Griggs, dated 1st February, 1855.   Both of these levies were dismissed by order of John H. Walker, Executor, · on the 19th of February, 1855.

The defendant also read in evidence so much and such parts of an exemplified record of a case in equity, in Putnam Superior Court, brought by Jefferson Adams, as the administrator of James A. Merriwether, deceased, against the creditors of the estate of deceased, to marshal the assets of said estate, as showed the indebtedness of Merriwether, and Griggs as his security, to Joel Walker, and to John H. Walker as his Executor ; and such parts as showed the indebtedness of James Griggs to said Walker and said executor.

Here the defendant rested.

The plaintiff in rebuttal, read in evidence so much of the said record of said case in equity as showed the indebtedness of Merriwether, and Griggs as his security, to said

Walker, and the indebtedness of said Griggs to Walker, at the date of the letter in which the new promise is alleged to be contained, and which is hereinbefore stated.

The evidence being closed on both sides, the presiding Judge charged the jury as follows, to-wit: That if the jury believe, from the evidence, that the letter of the defendant contains an absolute, clear, distinct and unequivocal promise to pay the Merriwether notes, to which defendant was security, and that the note sued on is one of the identical notes referred to in the letter of defendant, and that he intended to include the same in said promise, then they will find for the plaintiff. The jury will take into consideration J. Adams' letter, in so far as to ascertain only what note or notes, claim or claims, were referred to by defendant, and to ascertain the meaning and import of his letter.

The jury returned a verdict for the defendant.

Counsel for the plaintiff then moved for a new trial of said case, on the grounds:

1st. Because the verdict is contrary to law.

2d. Because the verdict is contrary to the evidence, the weight of evidence, and against and without evidence.

3d. Because the verdict is contrary to the charge of the Judge before stated.

This motion was overruled and a new trial denied, and the plaintiff in error seeks, by his writ, a reversal of that judgment.

SCARBOROUGH for plaintiff in error.

McCAY & HAWKINS for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

This was a motion for a new trial, on the ground that the verdict of the jury is strongly and decidedly against the weight of the evidence, which was refused by the Court below, and brought before us for review by writ of error.

The debt, upon its face, is barred by the statute of limitations, as to the defendant, and the plaintiff sought, on the

trial, to take the case out of the operation of that statute, which was relied on by defendant as a defence thereto, by the subsequent promise or acknowledgment of the debt, as contained in a letter written by defendant to J. Adams, on 10th February, 1857, in reply to one written to him by Mr. Adams on the 6th of that month.

According to the rule laid down by this Court, in Martin vs. Broach, 6 Ga., 31, an acknowledgment or promise sufficient to obviate the statute of limitations, or impose a new obligation, must specify, or plainly refer to, the particular demand or cause of action to be renewed or created by it.

2. Tried by this rule, is this demand, now sued upon, specified, or plainly referred to, in the acknowledgment or promise contained in the defendant's letter of 10th February, 1856? We think not. Mr. Adams, in his letter, refers generally, to the notes held by Mr. Walker on the late Judge Merriwether, and defendant as security. He makes no mention whatever of the number of the notes so held, the amount due on the notes, or when they were given and made payable. The defendant, in his reply, makes the same sort of general reference. In neither one is this particular debt specified, or plainly referred to.

3. The plaintiff, in order to identify the note sued on as the one referred to by the defendant's letter, introduced in evidence an exemplification of a proceeding in equity in Putnam Superior Court, by Jefferson Adams, as the administrator of Judge Merriwether's estate against the creditors of that estate, for the purpose of marshaling and distributing among those entitled to the same, the assets of that estate, in which this particular debt was specified as one held by Walker; one other note by Merriwether, and defendant as security, was enumerated therein, as belonging to, and held by, Walker; also, an execution against defendant and Merriwether, but which was, in fact, the individual debt of Merriwether. The execution was fully paid off out of the assets, and the notes received a *pro rata* share out of the assets of thirty cents on the dollar, which was credited on them. This evidence is very conclusive that the notes

referred to by Mr. Adams, in his letter, was the note for $500, and the demand sued on as the notes held by him for Mr. Walker on Merriwether and defendant; and it also raises a very strong presumption that defendant, who was a party to the proceeding in equity in Putnam, so understood the reference, and promised accordingly, but the presumption is not so strong as to be conclusive. The defendant might not have understood the note sued on to be one of the notes referred to, though it is probable that he did, and intended that his promise should apply to it. But it was a question of fact for the consideration of the jury, and they having found that the promise did not apply to this demand, and the Judge who tried the case having refused to disturb their verdict, we do not feel at liberty, under the circumstances, to control that discretion. This is a very old debt, made in 1840, due in 1841, has been actually barred, as against this defendant, since 1848, and he is but the security. A promise, or acknowledgment to revive the debt as to him, ought to be so clear and explicit as to the particular debt, that there could be no doubt as to his intention to renew his obligation to pay the debt.

Judgment affirmed.