**No. 54.**—WILLIAM ZEIGLER, plaintiff in error, *vs.* WILLIS B. SCOTT, administrator, &c. defendant.

[1.] The defendant is not bound to pay up the money lent, with lawful interest thereon, in order to entitle him to read the answers of the plaintiff to interrogatories taken under the Act of 1847, in support of his plea of usury.

[2.] In Equity, the rule requiring the payment of the principal and lawful interest is a condition to the *relief* sought, and not to the discovery.

[3.] Although the usury could be proved by *aliunde* testimony, still the borrower is not entitled to relief, except upon the terms of paying up the principal and legal interest.

[4.] Answers to interrogatories procured under the Act of 1847, when responsive to the questions propounded, are conclusive, unless contradicted by two witnesses, or one witness and circumstances.

[5.] Usury paid on a former contract may be pleaded as a set-off to the existing debt, provided it be not barred by the Statute of Limitations.

[6.] In an action of assumpsit, for money had and received, the borrower can only recover the usurious gain or excess.   He is entitled to no more by way of set-off.

[7.] In answers to interrogatories taken under the Act of 1847, the defendant cannot set up an independent contract not elicited by the questions asked.

[8.] If the verdict of the Jury is contrary to the evidence and cannot be sustained upon any *hypothesis* consistent with the testimony, a new trial will be granted.

Assumpsit, in Crawford Superior Court.   Motion for a new trial.   Decided by Judge STARK, February Term, 1851.

Plaintiff in error brought an action of assumpsit against the defendant in error, on a promissory note for $2498 00, dated in February, 1845, and due "one day after date," on which note there were two credits, one for $100 00, dated 27th March, 1846, the other for $296 25, dated 5th April, 1847.

The defendant filed the plea of usury, and served interrogatories on the plaintiff, under the Act of 1847.

On the trial, it appeared from the answers of the plaintiff, that in 1838, the plaintiff loaned to defendant's intestate, Willis S. Scott, deceased, $1000 00, at 16 per cent. per annum, and took his note for the principal and usurious interest, due 25th December, 1838. This note was then renewed at 16 per cent. and made due 25th December, 1839, for $1379 42; it was again renewed in 1840 and 1841. In March, 1840, plaintiff loaned defendant's intestate $2000 00, at 16 per cent. and took a separate note for it, due the 25th December thereafter, which note was renewed in 1841, at the same rate of interest. In June, 1840, plaintiff sold cotton to defendant's intestate, amounting to $668 44 cents.

In January, 1842, plaintiff and defendant's intestate had a settlement of their affairs, when plaintiff purchased of defendant's intestate, two negro girls, at $1300 00; this was admitted by the parties to be an excessive price, and in consideration of this excess, it was understood and agreed and so intended, that the contracts were and should be purged of the usury in them. Defendant's intestate also turned over to plaintiff a note on William B. Colbert, for $700 00, which sums of $1300 00 and $700 00, were applied to the extinguishment of the note given for the loan of $1000 00 in 1838, and the balance of the payment credited on the notes for the $2000 loan and the cotton note. These notes were then consolidated, and a new note taken for the amount due on them, at 8 per cent. per annum. It was out of this note that the one sued on sprung.

At August Term, 1850, the cause was tried on the appeal, when the Jury rendered a verdict in favor of the plaintiff, for $603 75 cents.

Zeigler vs. Scott.

When plaintiff moved for a new trial, on the grounds,

1st. Because the verdict was contrary to evidence.

2d. Because the verdict was contrary to law.

At the February Term, 1851, the rule *ni si.* was discharged by the Court, and counsel for plaintiff excepted.

HUNTER & HALL, for plaintiff in error.

GREEN & CULVERHOUSE, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Our investigation in this case, will be restricted to the single inquiry, whether the verdict of the Jury was contrary to evidence? In other words, whether upon any hypothesis consistent with the proof, the finding of the Jury can be sustained?

In order to ascertain this satisfactorily, it becomes necessary to settle several important points of law which arise in the way.

[1.] What is the proper construction of the Statute authorizing discoveries at Common Law? The Act provides that the adverse party shall be compelled at Law to answer interrogatories on his oath or affirmation, and in solemn form; and the answers when made and filed shall be evidence on the trial of the cause, "in the same manner and to the same purpose and extent, and upon the same condition in all respects, as if the same had been procured upon a bill in Chancery for discovery, but no further or otherwise." *New Digest,* 465, 466.

Under this Statute, it is contended that before the answers of the plaintiff to the interrogatories can be read by the defendant, in support of his plea of usury, he must offer to pay the principal and legal interest due by him—indeed, that he impliedly consents to do this, by resorting to the conscience of the adverse party for proof.

We fully recognize the doctrine in Chancery, that whenever a borrower files his bill in Equity, to be *relieved against* a usurious contract, the Court refuses *relief,* except upon the terms of his paying up the principal sum due, *and legal interest.* It is

based upon that corner-stone principle of the Court of Chancery, that he who asks equity must do equity, and in that forum it is rigorously required in all cases, notwithstanding the law may have positively declared the contract void. 1 *Fon. b.* 1, *ch.* 1, §3. (*h.*)    5 *Johns. Ch. Rep.* 137.    4 *Band.* 415.

[2.] It will be observed, however, that this exaction is only made where *relief* is sought from the illicit contract, and that it is made, whether the applicant had or had not the benefit of his adversary's answer.

[3.] For, although he could prove the usury, by *aliunde* testimony, and without a discovery from the lender, still he is not entitled to *relief*, except upon the terms stated. It is a misapprehension, therefore, to suppose that the condition of paying up the money lent with lawful interest, was a reward to the lender for making the discovery. It was a condition to the *relief* sought, and not to the *discovery*.    See *Bovauquet vs. Dashwood*, *Cas. Temp. Talbot*, 38.    *Brownsund vs. Edwards*, 2 *Ves. jun.* 243, 249.    *Scott vs. Nesbitt*, 14 *Wes.* 442.    *Fanning vs. Dunham*, 5 *Johns. Ch. Rep.* 122.

We take the Act according to its obvious and literal meaning ; and the Legislature, neither in this Statute nor that passed previously, in 1842, (*New Digest*, 601,) compelling the plaintiff to discover usury on oath, having made the payment of the money lent with lawful interest, a condition to the reading of the evidence, we do not feel at liberty to superadd it.

It will be readily perceived how much the result in this case, depends upon our opinion upon this point.

[4.] One of the main issues in this controversy is, whether the first note of $1000, with the usurious interest thereon, entered into and constituted a part of the consideration of the note sued on ?    The question is distinctly and repeatedly asked in the interrogatories, and as fully and explicitly answered in the negative.    Zeigler swears that this first loan, with the interest thereon, was paid off and discharged in January, 1842, by the two negroes sold to him by Scott, and the note which he let him have on Colbert ; and that the first-note had no connexion what-

Zeigler *vs.* Scott.

ever with that which is the foundation of the present action, and there is not a particle of proof contradicting this statement.

Now the Statute declares, that the answers to the interrogatories are to be evidence " to the same extent in all respects as if the same had been procured upon a bill in Chancery for discovery." But an answer in Equity is conclusive, when responsive to the bill, unless contradicted by two witnesses or one witness and circumstances.

If, then, the Jury arrived at the result which they did, by adding this first debt of $1000 to the last loan of $2000, and deducting from the aggregate the $2000 paid in property and paper, and the $396 credited on the last note of $2498—and such is not unlikely the fact—then the verdict is contrary to the evidence and ought to be set aside; for the Jury had no right to assume, in face of the proof, that any portion of the $1000 note was left unextinguished, by the settlement between the parties, in January, 1842.

With these principles adjusted, how stands the case? The plaintiff lent the defendant $1000 in 1838, which compounded annually, at 16 per cent. amounted to $1863 77, in January, 1842, the date of the settlement. The payment of two thousand dollars, made at that time, discharged this debt, and left a balance of $136 23, to go to the $2000 loaned in March, 1840. This balance, and the $396 endorsed upon the note in suit, is all, according to the proof, that should be deducted from the $2000 in the way of payments. It is true that the plaintiff admits that in addition to these, some small sums were received, the amount of which he cannot recollect, and they may be well set off by the blacksmith's work done by him for the defendant; add the two items together, then, of $396 and $136 23, making $532 23, and subtract the aggregate from the $2000, and the verdict should have been for $1467 73, instead of $630 75.

[5.] But the defendant pleaded, among other things, as a set-off to the plaintiff's demand, the usury paid on the first note, which amounted, as we have seen, to $431 88½. Whether the Statute of Limitations was *replied* to this plea, the record does not disclose. The final payment of usury on the first note

VOL X 50

was made in January, 1842, and the action was not brought until January, 1849, just seven years thereafter.

This affords another striking illustration of the defect in our Judiciary Act, which sends parties to the Jury upon the written declaration and answer, all the subsequent pleadings being conducted orally. But take the most favorable view of the case for the defendant, namely, that the Statute was not replied in bar of the set-off, for usurious payments, and grant that the Jury allowed the full amount of the usury paid, $631 88½, still the verdict should have been for $1035 84½; and in all these estimates, I have assumed that the Colbert note amounted to $700, as testified to by Colbert himself, and not $600, as stated by the plaintiff in his answers.

Of course, I only allow the defendant to recover back, in his plea of set-off, the *usurious gain*; for it is well settled, both in England and in this country, that if a borrower pays up the amount of his usurious debt to the lender, and afterwards sues to recover it back, in an action for money had and received, he can only recover the usurious excess, since *ex œquo et lino*, he ought not to recover back the money really advanced, and the legal interest thereon. 1 *T. R.* 153. *Douglass*, 697, *in notes.* 2 *Johns. Ch. R.* 191. 5 *Johns. Ch. R.* 146. 6 *Johns. Ch. R.* 95. 1 *Leigh*, 147.

[7.] In answer to the 3d interrogatory, the plaintiff sets up an agreement or understanding, between the defendant and himself, to the effect that the excess of $200 in the price which he claims to have paid for the two negroes, was to extinguish all the usury which he had extorted. But this portion of the answer is not elicited by the question propounded, and as the Act of 1847 only allows the answer to be evidence " to the same extent as if obtained in Chancery, *but no further or otherwise*," we hold that it was inadmissible for the purpose of setting up this independent contract.

In addition to the two sums of $1000 and $2000 loaned to the defendant, the plaintiff let him have cotton on the 11th of June, 1840, valued at $668 44, which the plaintiff contends is still unpaid, and made up a part of the present large note; but

we think the Jury were warranted in finding that this indebtedness was totally extinguished. The plaintiff, among other things, was asked if he ever loaned the defendant any cotton? He denied expressly that he ever did. The defendant, on the trial, tendered in evidence a paper given by his intestate to Zeigler, on the same day on which the cotton note was dated, wherein Scott promised on or before the 1st day of December next thereafter, to deliver to plaintiff in Macon, 8,355½ pounds of ginned cotton for value received of him, and upon the back of this receipt was an acknowledgement by the plaintiff, dated 4th February, (*the year left blank,*) that he had received 8000 lbs. of cotton. This writing, as well as the note, having been found in the possession of Scott, shows that he had discharged them both; and taking all the circumstances together, particularly the denial of the plaintiff that he had ever loaned Scott any cotton, we think that the Jury had a right to infer that this cotton constituted the consideration of the note, and that when it was delivered in Macon, the note as well as the receipt, were extinguished; that they both related to one and the same transaction.

[8.] Under the views which we have presented of the case, both upon the law and the facts, justice would seem to require that it should be remanded for another hearing. Accordingly, it is so ordered.