## 2910. JONES v. NORTON et al.

1. The maker of a series of negotiable notes executed a mortgage to his indorser or surety on the notes, to protect him against loss on the contract, and stipulated in the mortgage that on a failure to pay any one of the notes when due, the indorser or surety should have the right to declare the other notes due and proceed to foreclose the mortgage, in order to protect himself as such indorser or surety. ·The maker of the notes defaulted in the payment of several of them, whereupon the indorser or surety paid the unpaid notes to the original payee and became the holder thereof, and, under the stipulation of the mortgage, declared them to be due, and proceeded to collect· them by suit. *Held*, the mortgage ·was a valid contract, and the stipulation referred to was enforceable by the surety or indorser, either while the notes were still held by the payee, or after the surety or indorser had become the lawful transferee of the notes.

2. A premium or commission paid by the principal maker of a promissory note to the indorser or surety to protect the latter in the risk assumed and to compensate him for his services in procuring a loan for which the note is given, in which premium or commission the· lender has no interest, is in no sense usury.

3. An indorser has the right to purchase a negotiable note from the payee; and, when the note is due by its terms or becomes due by a contract between the maker and the indorser, the latter can sue the former on the note. In such case the suit is based, not upon the obligation of the maker to reimburse his indorser for money paid out for his benefit, but upon the obligation to pay his negotiable note to whomsoever may be the lawful holder thereof.

4. Questions raised by assignments of error not referred to in the argument or brief for the plaintiff in error will not be decided.

5. The pleas were properly stricken, and the evidence demanded the verdict as directed.

DECIDED JUNE 7, 1911.

Complaint; from city court of Savannah—Judge Davis Freeman. August 4, 1910.

This is a suit on promissory notes, to recover the principal, interest, and stipulated attorney's fees. The petition contains three counts. The first count alleges, in substance, that on August 6, 1909, the defendant, Jones, made and delivered to the Citizens & Southern Bank eleven notes for $200 each, due, respectively, from seven to seventeen months after date, and one note for $100, due eighteen months after date; that all of these notes were indorsed and transferred by the bank to the plaintiffs for value, without notice of any defect; that the notes due seven, eight and nine months after date were transferred to them after maturity, and the others

before maturity; that the maker had defaulted in the payment of the notes due seven, eight, nine, and ten months after date, and they were still unpaid; that to secure the payment of these notes to the bank, and the payment of other notes made directly to the plaintiffs by the defendant, he made a mortgage (a copy of which was set out, and which was referred to solely for the purpose of showing the maturity of the notes sued on, and was not sued on as a mortgage), in which he convenanted that, if default should be made in the payment of any one or all of said notes when due, it should be lawful for the parties of the second part (the plaintiffs) to declare the whole remaining indebtedness to be due and payable at once; that on June 9, 1910, the plaintiffs personally served the defendant with notice, in the terms of the mortgage, declaring all of the said notes due because of default in the payment of the past-due notes, and stating their intention to bring suit thereon to the July term, 1910, of the city court of Savannah. The second count alleged that the defendant was indebted to the plaintiffs in the sum of $550 principal, besides interest and attorney's fees, on eleven notes for $50 each, payable to the plaintiffs, dated August 6, 1909, and due, respectively, from seven to seventeen months after date, and that the defendant had defaulted in the payment of the notes due from March 6 to June 6, 1910. These allegations were followed by allegations similar to those set out in the first count, as to the mortgage, etc. The third count was based on a separate transaction, being for $100 principal and for interest and attorney's fees, on a note; and there was a prayer for the enforcement of the lien given to secure the payment of the note.

The defendant demurred to the first count of the petition, contending that the relation between the plaintiffs and himself was that of principal and surety, and that, upon payment of the notes by the sureties, the notes were discharged, and the action should have been in assumpsit, and not on the notes; and that if the sureties did not pay the notes, but had merely had them transferred, there was no right of action in them, and their suit was premature. The demurrer was overruled, and this is assigned as error.

The answer admitted the execution of the notes and the mortgage, the default in payment of the past-due notes, and service of notice in regard to attorney's fees, but denied indebtedness for the principal sums, as well as for attorney's fees. It stated that for want

of sufficient information the defendant neither admitted nor denied the transfer of the notes as alleged, or the declaration of the maturity of the remaining notes on account of the default. The answer further alleged that the defendant borrowed from the Citizens & Southern Bank the sum of $3,500, payable in monthly instalments of $200, for which he gave his notes, and that the plaintiffs became sureties on the notes and not indorsers; that he gave also his notes for the aggregate sum of $900, payable monthly to the order of the plaintiffs, and executed a mortgage to indemnify them against loss by reason of their suretyship, and that he paid all the notes, both those to the bank and those to the plaintiffs, up to and including February 6, 1910; that on February 18, 1910, the plaintiffs, without just cause or reason, and before any legal default had been made or the liability of the sureties fixed and determined, attempted to foreclose the indemnity mortgage, and that, if he had made default in payment of any of the notes, it was caused without fault on his part, and without his consent, but was due to the illegal and wrongful attempt to foreclose this mortgage, whereby the sheriff of Chatham county had taken charge of his business and caused his default in performing his contract. The answer alleges that the only notes past due are "for March, April, May, and June, aggregating $800," that the rest of the notes have not matured, and that the plaintiffs are sureties on the notes, and can not charge the defendant for moneys that they have not been called upon to pay, and for which their liability in law has not become fixed and determined by judgment or otherwise. It is further alleged by the defendant that the contract and notes sued on and set out in the first and second counts of the petition are tainted with usury; that he has paid $300 in excess of the legal rate of interest on these notes for the amount of money loaned him by the bank up to February 6, 1910; that the $550 sued for in the second count is for money promised and contracted to be paid, for the use of money in excess of legal interest, and is usurious; that, as the sums of money sued for in the first and second counts are not due, the plaintiffs are not entitled to attorney's fees, and that the $100 sued for in the third count is infected with usury.

The answer was demurred to both generally and specially. The court sustained the demurrer to the answer as to the first and second counts of the petition, and overruled it as to the third count; and

thereupon the defendant amended, by setting up the transactions more in detail, but in substance repeating the answer as originally filed. On demurrer, both general and special, the amended answer was stricken; and this is assigned as error. A second amendment to the answer set up that the notes transferred to the plaintiffs before maturity were not due, and that the plaintiffs as sureties, being subrogated to the rights of the creditor, the Citizens & Southern Bank, which was without power or authority to demand payment of the same before maturity, they could not declare the same due and demand payment thereon before maturity; that the relation between the plaintiffs and the defendant being that of principal and surety, and the sum sued for not yet due, said sum could not now be demanded by either the creditor or the surety, as the transfer of the notes was without the consent of the defendant, and the sureties could not recover thereon before legally called on to pay the same; that, even if the transfer of the notes was valid, the plaintiffs were under no legal obligation to make payment until after maturity of the notes, and therefore could not recover on any of the notes not matured. This second amendment was demurred to generally, and also on the ground that the mortgage covenanted that the plaintiffs had a right to declare all the notes due in case of default as to any one of them, and that the facts presented by the answer contained an attack on the title of the plaintiffs, which was not necessary to let in the defense claimed. The amendment was stricken, and this is assigned as error.

The plaintiffs, by amendment, struck the third count of their petition. Exception is taken to the allowance of the amendment. The pleadings are voluminous, but it is not necessary to set them forth more in detail; the foregoing statement being sufficient to present the substantial questions raised, and counsel for the plaintiff in error, in their argument and brief, not insisting before this court on any questions raised by the pleadings except those which involve the substantial merits of the case.

On the trial the plaintiffs submitted the following evidence: The notes sued on in the first and second counts, all the notes made to the Citizens & Southern Bank and indorsed by it, the mortgage executed by the defendant to the plaintiffs to secure against loss on their indorsement; the notice given by the plaintiffs to the defendant, declaring default as to all the notes on failure to pay those due,

stating their intention to bring the suit and claim attorney's fees. The defendant moved for a nonsuit, on the ground that the notes and the mortgage sued on showed the plaintiffs to be sureties, and that they were suing for debts not matured, and that the suit was on notes, and not for money paid. The court overruled the motion, and the defendant excepted to this ruling. The defendant offered no evidence. The court directed a verdict for the full amount of the suit, and the defendant excepted.

*R. L. Colding, James F. Evans,* for plaintiff in error.

*William M. Farr, Edward S. Elliott,* contra.

HILL, C. J. (After stating the foregoing facts.)

1. Were all the notes sued on legally due when suit was brought? This question depends upon the right of the plaintiffs to declare all the notes to be due on default in the payment of any one of them. The mortgage executed by Jones to the Nortons to secure them in their indorsement of his notes to the bank contained a covenant that if default should be made in the payment of any of the notes made to the bank, and which were therein described, the Nortons would, at their option, have the right to declare the whole remaining indebtedness due and payable at once. In other words, only two things were necessary to mature all the notes, viz., a default in the payment of any one, and a declaration by the Nortons that the default matured all the notes. The default being admitted and this declaration duly proved, the question arises as to the validity of this provision of the mortgage. The provision is as follows: "And it is hereby covenanted and agreed, in further consideration of the premises, that if default should be made in the payment of any one or all of said notes, or any renewals thereof, or any interest thereon, in whole or in part, as and when the same may become due and payable, . . it shall and may be lawful for the parties of the second part [the Nortons], their heirs or assigns, at their option, to declare the whole remaining indebtedness then unpaid to be due and payable at once." It is further provided that "in case of default in the payment of said debt, or any part thereof, . . the parties of the second part shall have the right either to sell said property [described in the mortgage], or they may take such other legal proceedings hereunder as they may deem necessary and proper in the premises." To provide against any loss which might grow out of their suretyship or indorsement on the notes made by the

defendant, Jones, the plaintiffs took the mortgage with the covenant in question. It can not be doubted that such a provision in a mortgage is valid. The provision is one of general usage, and has been repeatedly held to be valid. In *Shellman* v. *Scott, R. M. Charlt.* 380, a provision similar in its terms was first held in this State to be valid. In that case the covenant in the mortgage was in the following language: "And if default shall be made in the payment of the principal sum aforesaid, or in the payment of interest at any time when the same shall become due, then, in any such case, upon any such default, it shall and may be lawful for the said Benjamin S. Scott [mortgagee], his heirs," etc., "to grant, sell," etc. Similar stipulations, providing for the acceleration of the maturity of unpaid notes on the failure to pay any one when due, were passed upon by the Supreme Court in *Kilcrease* v. *Johnson,* 85 *Ga.* 600 (3), (11 S. E. 870) ; *Smith* v. *Champion,* 102 *Ga.* 92 (3), (29 S. E. 160) ; *Stocking* v. *Moury,* 128 *Ga.* 414 (57 S. E. 704) ; *Harris* v. *Powers,* 129 *Ga.* 76 (58 S. E. 1038). In the case of *Sneed* v. *Wiggins,* 3 *Ga.* 94, the contract was one to pay money, in which it was expressly stipulated that the money should be paid by instalments at specified times, and if one instalment was not promptly paid, the whole sum should thereupon become due and payable. It was held that time was of the essence of the contract, and that if the party agreeing to pay failed to do so, he was not entitled to relief in equity. But the validity of such a provision is not an open question, either in this State or elsewhere. 20 Amer. & Eng. Enc. of Law (2d ed.), 932; 27 Cyc. 1101. Certainly the plaintiffs, as the holders of the notes, had the right to sue on them. The defendant borrowed $3,500 from the bank, and gave his promissory notes therefor, each one of which was indorsed by the plaintiffs. In consideration of their indorsement, the plaintiffs required him to give his notes to them, for $50 each, to the amount of $900, due in from one to eighteen months; and, in order to protect them from loss from the indorsement, they required him to give them the mortgage in question. This mortgage secured them in two things—against loss on account of their indorsements on the notes to the bank, and also in the payment of the $900 which they required of him for their risk as sureties. Either their liability on the notes as sureties or their indorsements constituted a good and valid consideration for the execution of the mortgage. The notes were

negotiable. They were all indorsed in blank by the bank. The plaintiffs, as the holders of the notes, had the right to sue in their own names certainly on those notes which were past due at the time of the transfer, and it can not be denied that the action is valid as to the four $200 notes (or $800 in all) which were past due when the transfer was made; and we do not understand that any defense was made as to these. It is true the defendant in his plea says that he does not believe that the transfer was for value, or that the plaintiffs had paid for the notes, and he demands strict proof of title. But, in the absence of proof to the contrary, the law presumes that the holder of a promissory negotiable note acquired the same before maturity and for value, and is a bona fide holder thereof, and his title can not be inquired into, unless it is necessary for the protection of the defendant, or to let in some defense which he could not otherwise make. Civil Code (1910), § 4290.

The plaintiffs, then, being the bona fide holders of the notes made to the bank, as transferees, and as such entitled to sue thereon, and being the holders of the mortgage, based upon a valid consideration, it can not be seriously questioned that they were entitled to the benefit of the stipulation contained in the mortgage (and which is shown to be a perfectly valid stipulation), that in case of default as to one note, they had the right at their option to declare all the remaining notes due. But, even without any legal authority in support of this right, the contract itself expressly gave the plaintiffs the right, on default in the payment of one note, to declare all the others due, and, as this stipulation or covenant does not contravene any public policy or general principle of law, it is valid and binding. It is not denied that such a stipulation would be valid when made to the payee of notes, or by the holder of a mortgage made to secure notes. The question is whether such a provision is valid when made to protect a surety. Under section 3568 of the Civil Code (1910), any surety who has paid the debt of his principal is entitled to be substituted in the place of his creditor as to all securities held by him for the payment of the debt. If, therefore, the bank had held a mortgage providing that, in case of default of one note, all the notes would become due, the transfer of the notes by the bank would carry with it to the transferee the right which the bank had as to this stipulation; for the transfer of a note secured by a mortgage carries with it the mortgage lien. *National*

*Bank* v. *Exchange Bank,* 110 *Ga.* 692 (36 S. E. 265). Since, therefore, a valid transfer of promissory notes carries with it any covenant or stipulation which provides that the default in the payment of one note will give an election to declare all the notes due, we do not see why it is not competent and legal to make a direct covenant to this effect, for a valuable consideration, with the indorser or surety on the note. "The right of the surety in these respects will be controlled by the terms of agreement between the parties, as where it is stipulated that the surety may enforce his security upon default of the principal, or the contract is otherwise of such a nature as to give the surety the right to enforce his security before payment." 32 Cyc. 248. We conclude that the mortgage made to the plaintiffs as indorsers of the promissory notes which contained the stipulation that all the notes, at the option of the holder of the mortgage, could be declared to be due on failure to pay any one of them, and which was to protect them against the risk which they had assumed, was a valid contract and enforceable by them; and especially is this true in view of the fact that they had become the actual holders of the notes by purchase from the bank before the declaration as to the payment of all the notes was made and before the suit was brought.

2. It is insisted that the court erred in striking the plea of usury. It is not claimed that there was any usury in the notes made to the bank, but it is said that the notes made to the sureties for the bonus of $900 were usurious; it being insisted that these sureties were practically the lenders of the money to the defendant, as the bank advanced the money to him on their indorsement, and as they had taken an indemnity mortgage, not only for the sum advanced by the bank, but also to secure the payment of their bonus of $900, and that in this suit they were seeking to recover not only the principal sum borrowed, together with the highest rate of interest allowable, but also the further sum of $550, with interest thereon, for the use of the principal sum, which was usury; at least, it is said this was a question for the jury, and the court should have submitted to the jury the question as to what was the real truth of the transaction, and, if the jury found from the evidence that it was resorted to to evade the usury laws, the contract would be void, at least to the extent of the usury, but that if the jury found that it was a bona fide sale of credit to enable the maker of the notes to borrow

money from another, it was not usurious. The allegations as to usury did not leave this question issuable. It is admitted that the money was borrowed from the bank, and that the defendant made his notes to the bank for the money, and that these notes provided for only the legal rate of interest. The bank was unwilling to lend the money without an indorser; and, to procure the indorsement of the plaintiffs, the defendant agreed to pay them the $900, as well as to indemnify them against loss on account of their indorsement. It is clear that the $900 was paid as a premium, not to the bank, but to the plaintiffs as indorsers of the notes made by the defendant to the bank; not alone for securing a loan from the bank, though this fact would not taint the transaction with usury, but for their indorsement of the notes. The transaction was perfectly valid, and not tainted with usury. "Where the lender neither takes nor contracts to take more than legal interest, the loan is not rendered usurious by money paid or agreed to be paid others by the borrower in order to obtain the loan." Civil Code (1910), § 3437. Therefore, even if the facts showed that the $900 was contracted to be paid to the plaintiffs by the defendant as the borrower in order to obtain the loan, this would not make it usurious. But the evidence shows that the plaintiffs not only assisted the defendant in obtaining the loan, but made it possible for him to obtain it, in agreeing to become indorsers thereon. It is well settled in this State that where the lender of money neither takes nor contracts to take anything beyond lawful interest, the loan is not rendered usurious by what the borrower does in procuring the loan and using its proceeds. *Merck* v. *American Freehold Co.*, 79 *Ga.* 213 (7 S. E. 265); *Hughes* v. *Griswold*, 82 *Ga.* 299 (9 S. E. 1092). In this case it is not claimed that the Citizens & Southern Bank ever took or contracted to take anything for the loan beyond the legal interest, and the fact that the borrower gave his notes for $900 to the plaintiffs as compensation for the risk undertaken by them in their indorsement and for their services in procuring the loan did not make the loan by the bank usurious, and it was a perfectly legal contract for the defendant to make. *Blount* v. *Bowne*, 82 *Ga.* 346 (S. E. 164). Indeed, the answer nowhere avers that the bank had any knowledge whatever of this contract made by Jones with the Nortons.

3.   The next point urged by counsel for the plaintiff in error is that the suit was prematurely brought, for the reason that the notes had not matured; that the transfer of the notes by the creditor to the sureties was entirely voluntary; that the sureties had no right to proceed until a judgment had been obtained against them and their liability as sureties had been fixed and determined in law by judgment or otherwise.   In support of this contention, counsel cites section 3555 of the Civil Code (1910), which is in the following language:   "If the principal executes any mortgage or gives other security to the surety or indorser to indemnify him against loss by reason of his suretyship, the surety or indorser may proceed to foreclose such mortgage, or enforce such other lien or security, as soon as judgment shall be rendered against him on his contract."   In so far as this section of the code is applicable at all to the facts of this case, it simply provides a remedy for the indorser or surety, in the absence of any stipulations in the contract between the principal and the surety on the subject.   This section recognizes the right of the principal to give to his surety or indorser a mortgage or other security to secure and protect him on his indorsement or suretyship, and, if it is legal for such a mortgage to be given, it can be provided in the mortgage that it may be foreclosed or enforced in such way as the parties may stipulate, without reference to the statutory right referred to.   In other words, in such a contract it would be perfectly competent for the parties to stipulate in the mortgage that, on failure to pay one of the instalments, all the balance of the debt would become due, and the holder of the mortgage would have a right to proceed to collect the whole debt.   But, aside from all this, we do not see why it was not perfectly legitimate for the sureties on these notes made to the bank by Jones, who were apparently to be called on to pay them because of the default of the maker, could not have bought the notes from the bank, and, after having bought them and becoming the holders thereof for a valuable consideration, have exercised the right given under the mortgage to declare that all the notes were due because of the default in the payment of the four which had matured before the transfer, and brought suit at once, for in this event no judgment could be obtained against the sureties, as they had ceased to be sureties and were the holders of the notes, and were subrogated to all the original rights of the payee as against the maker.   Of course,

the notes for $550, which were given to the plaintiffs as a bonus for their services and as a compensation for their risk in becoming sureties for the defendant, by the same stipulations in the mortgage were all due, and the plaintiffs, being the holders of all the notes made by the same maker, could bring suit thereon in the same action against him. In other words, the suit in this case was not one by a surety against his principal, based upon the fact that he as surety had been called upon to pay the debt of his principal, but it was simply a case where the surety had become the holder, by purchase, of the negotiable instrument on which he was a surety, and, as such holder of the note, was claiming that the maker should pay him, not because he had paid the note or was liable thereon as surety, but because he stood in the place of the original payee, and for that reason was entitled to payment. The whole contention, it seems to us, as to when a surety would have a right to bring a suit against his principal, is not germane to the facts set out by the pleadings, which are not in dispute.

The foregoing are the only questions argued by counsel for the plaintiff in error before this court and embraced in his brief, many other questions raised by the record having been abandoned.

The uncontradicted evidence demanded the verdict.

*Judgment affirmed.*