## MORGAN *v.* SHEPHERD.

34

*R. R. Jackson,* for plaintiff in error.
*Orin J. Bundy* and *J. L. R. Boyd,* contra.

Hines, J.   Shepherd applied to Morgan to borrow from him the sum of $25, but Morgan refused to make said loan; but agreed to guarantee Shepherd's note for that amount, payable to the Southern Loan and Real Estate Corporation, if Shepherd would execute to him a bill of sale to his household goods to protect him against loss arising by reason of his guaranty of Shepherd's note, and if Shepherd would pay him for such guaranty the sum of $4.70 per month. Shepherd accepted this proposition, complied with its terms, and received the principal of said note.   On the first of each month from September 1, 1927, to February 1, 1928, inclusive, Shepherd paid to Morgan 25 cents per month as interest on said note. Shepherd paid Morgan the sum of $4.70 per month for having guaranteed his note, making in all the sum of $28.20.   Shepherd brought suit in the municipal court of Atlanta to recover from Morgan said sum, upon the ground that such charge for his guaranty was in violation of section 17 of the act of August 17, 1920 (Ga. Laws 1920, pp. 215, 220, 221).   Morgan demurred to the petition of Shepherd, upon the grounds (1) that no cause of action is set forth therein, (2) that it affirmatively appears from said petition that Shepherd is seeking to recover sums of money paid to Morgan as a charge for guaranteeing his note, which he discounted with others, and said charges for said guarantee were not illegal and can not be recovered; (3) that the act of August 17, 1920, regulating the lending of money, on which said suit is predicated, does not prohibit or regulate charges for guaranty by those who are not lenders of money, and that the language in the 17th section of said act, with respect to the "loan, use, or sale of credit," should not be construed to mean that said act prohibits or regulates the charge for guaranty of the payment of an obligation by one who is not himself a lender; and (4) that if a contrary construction of said act were adopted, and if it were held that this

portion of the 17th section of said act prohibited or regulated a charge for guaranty, the said portion of said section would be unconstitutional and void as violative of article 3, section 7, paragraph 8, of the constitution of this State, wherein it is provided that no law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from that expressed in the title thereof, said act containing more than one such matter, and said portion of said act contains matter not expressed in the title thereof, which limits the scope of the act to matters connected with the charges for the lending of money and the regulation thereof, and said portion of said section purports to contain a provision in regard to charges for guaranty by those who were not themselves lenders, which said matter is not contained in the title of the act and is not germane thereto.

The defendant by amendment added 19 additional grounds of demurrer, to which we need not refer, for the reasons that counsel for the defendant in his brief specially insists only upon the first, second, third, and fourth grounds of the original demurrer, and that these added grounds are lacking in merit.

The trial judge in the municipal court overruled the demurrer. The defendant appealed to the appellate division of that court, which sustained the judgment of the trial judge. The defendant sued out a certiorari, in which he sought to have the superior court review and reverse the judgment of the appellate division of the municipal court. The judge of the superior court, overruled the certiorari, and the present writ of error was sued out to review that judgment.

■ It is insisted that the act of 1920 does not prohibit a guarantor from charging one for whose benefit he enters into a contract of guaranty, and that this act does not limit the charge for such service. Section 17 of this act provides that "No person, copartnership, or corporation, except as authorized by this act, shall directly or indirectly charge, contract for, or receive any interest or consideration greater than eight (8) per centum per annum upon the loan, use, or foreclosure [forbearance] of money, goods, or things in action, or upon the loan, use, or sale of credit, of the amount or value of three hundred dollars ($300) or less. The foregoing prohibition shall apply to any person, who, as security for any such loan, use, or forebearance of money, goods, or things in

action or for any such loan, use, or sale of credit, makes a pretended purchase of property from any person and permits the owner or pledgor to retain possession thereof, or who by any device or pretense of charging for his services or otherwise seeks to obtain a greater compensation than is authorized by this act. No loan for which a greater rate of interest or charge than is allowed by this act has been contracted for or received, wherever made, shall be enforced in this State, and any person in any wise participating therein in this State shall be subject to the provisions of this act." Acts 1920, pp. 215, 220, 221. This act prohibits any one from directly or indirectly charging for or receiving any interest or consideration greater than 8 per cent. per annum for the loan or use of money, goods, or other things, or upon the loan, use, or sale of credit. The language, "the loan, use, or sale of credit," embraces any contract by which one guarantees the payment of the note of another. Whenever one person guarantees the payment of the obligation of a borrower for money borrowed, such guarantor uses his credit in order to induce the lender to make the loan to the borrower; and such guarantor falls within the meaning and intent of this provision in this section of this act. This being so, the transaction with which we are dealing falls within the 17th section of the act of 1920; and when the guarantor charged more than 8 per cent. per annum for guaranteeing the contract of the borrower, he violated the provisions of this section.

■ But it is insisted that if we give this construction to section 17 of this act, it violates article 3, section 7, paragraph 8, of the constitution of this State, which declares that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." We can not agree to this contention of counsel for the defendant. The title of this act is "An act to license and regulate the business of making loans in sums of $300, or less, secured or unsecured, at a greater rate of interest than eight (8) per centum per annum, prescribing the rate of interest and charge therefor, and penalties for the violation thereof; regulating the assignment of wages or salaries, earned or to be earned, when taken as security for any such loan; and for other purposes." It will thus be seen that this act is one to "regulate the business of making loans in sums of $300 or less." This title is very broad. One of its purposes is to

prescribe the charge for the guaranty of the payment of an obligation of another. A part of the business of making loans is the taking of security or guaranty for their payment. Borrowers have to furnish such security or guaranty. Incident to this is the subject of charges for securing or guaranteeing the loan. The language, "and for other purposes," embraces any matter which is germane to the main purposes of the act. Under the title, "to regulate public instruction in the County of Richmond," an act of the legislature could grant authority to the board of education to levy a tax ·for school purposes, and this would not make the act unconstitutional as containing matter different from its title. *Smith* v. *Bohler, 72 Ga.* 546. The subject-matter of section 17 of this act clearly relates to the business of making small loans. Provisions germane to the general subject-matter embraced in the title of an act, and which are designed to carry into effect the purposes for which·it is passed, may be constitutionally enacted therein, though not referred to in the title otherwise than by use of the words "and for other purposes." *Banks* v. *State, 124 Ga.* 15 (52 S. E. 74, 2 L. R. A. (N. S.) 1007). A title which reasonably expresses the general subject of legislation covers all matters properly connected with the general subject and germane thereto. *Martin* v. *Broach, 6 Ga.* 21, 27 (50 Am. D. 306) ; *Howell* v. *State, 71 Ga.* 224, 227 (51 Am. R. 259) ; *Davis* v. *Ward,* 155 *Ga.* 748, 771 (118 S. E. 378) ; *Wilson* v. *Supreme Forest,* 156 *Ga.* 403, 407 (119 S. E. 394) ; *Wright* v. *Fulton County,* 169 *Ga.* 354, 358 (150 S. E. 262). Titles exceedingly general and indefinite have been held sufficient. *Brown* v. *State, 73 Ga.* 38; *Plumb* v. *Christie,* 103 *Ga.* 686, 700 (30 S. E. 759, 42 L. R. A. 181). So we are of the opinion that this act does not contain more than one subject-matter, and does not contain matter different from what is expressed in the title thereof.

■ But it is insisted that where the lender neither takes nor contracts to take more than lawful interest, the loan is not rendered usurious by money paid or agreed to be paid others by the borrower in order to obtain the loan. This is true. Civil Code (1910), § 3437. It is likewise true that premium or commission paid by the principal maker of a promissory note, to the indorser or surety, to protect the latter in the risk assumed and to compensate him for his services in procuring the loan for which the note is given, in which premium or commission the lender has no interest, is in no

sense usury. *Jones* v. *Norton*, 9 *Ga. App.* 333 (71 S. E. 687); *Merck* v. *Am. Freehold Co.*, 79 *Ga.* 213 (7 S. E. 265); *Hughes* v. *Griswold*, 82 *Ga.* 299 (9 S. E. 1092). But while, under the law as it stood prior to the adoption of the act of 1920, a reasonable charge by the indorser or surety, to protect himself in the risk assumed, and to compensate him for services in procuring a loan for another, in which premium or commission the lender had no interest, was lawful, and in no sense constituted usury, and while this is still so, it does not follow that it was beyond the power of the legislature to regulate the commissions or charges made by one who becomes surety or guarantor for money borrowed. It is as competent for the legislature to regulate such charges as to regulate the rates of interest which can be charged for such loan. As we have seen, section 17 makes it unlawful for any guarantor to charge, contract for, or receive any consideration greater than 8 per cent. per annum for his guaranty of any loan of this class. This section further provides that it shall be enforced in this State, and any person in any wise participating therein in this State shall be subject to the provisions of this act. So the final question is, where a charge greater than 8 per cent. per annum is made for guaranteeing a loan of money, and the charge is actually paid, can the same be recovered by the party paying it? It is insisted that the payment of this charge was voluntary, and can not be recovered unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property. Civil Code (1910), § 4317. In *Winkler* v. *Scudder*, 1 *Ga.* 108, 135, this court laid down the rule that usury paid could be recovered. In *Zeigler* v. *Scott*, 10 *Ga.* 389, 394 (54 Am. D. 395), it was held that "it is well settled, both in England and in this country, that if a borrower pays up the amount of his usurious debt to the lender, and afterwards sues to recover it back, in an action for money had and received, he can only recover the usurious excess, since *ex æquo et bono* he ought not to recover back the money really advanced, and the legal interest thereon." In *Parker* v. *Fulton Loan &c. Asso.*, 42 *Ga.* 451, it was held that usury voluntarily paid could be recovered under section 2025 of the Code of 1868, which declared that "The effect of usury is to annul and make void the contract for the usury; the lender having the right to recover the principal sum loaned, with legal in-

terest. All titles to property made as a part of an usurious contract, or to evade the laws against usury, are void." "At common law, if a borrower paid the amount of the usurious debt to the lender, he could recover from the lender the usury in excess of the debt and legal interest." *First National Bank of Blakely* v. *Davis,* 135 *Ga.* 687, 689 (70 S. E. 246, 36 L. R. A. (N. S.) 134). By the weight of authority, both in this country and in England, an action at common law, in the nature of an action for money had and received, will lie for the recovery of usurious payments in excess of principal and legal interest. 27 R. C. L. 269, § 72. The reason upon which this doctrine is based is that a payment of usurious interest is regarded as obtained by taking advantage of the necessities of the borrower, and is therefore excepted from the ordinary rule that one who voluntarily pays money on an illegal demand can not maintain an action to recover such payment. The usurer is regarded as an oppressor and the debtor as a victim, so that the payment of usury is regarded as involuntary; and no proof of duress or oppression is necessary to sustain the rule, other than that involved in the act itself of taking the money under an usurious contract.

The present suit, however, was not brought to recover usurious interest *eo nomine,* unless we regard the transaction as a mere scheme to cover the usury; but it was brought for the purpose of recovering a charge for guaranteeing the debt of the borrower, so as to enable him to discount his note and obtain the money thereon. Treating the action as brought solely for recovering an illegal charge for the guaranty of the payment of the debt of the borrower, we think that the rule applicable to the recovery of usurious interest is applicable to a suit brought to recover an illegal charge for such service. We have seen that section 17 of the act of 1920, except as therein authorized, prohibits any person, copartnership, or corporation from directly or indirectly charging, contracting for, or receiving any interest or consideration greater than 8 per cent. per annum upon the loan, use, or forbearance of money, goods, or things in action, or upon the loan, use, or sale of credit, of the amount or value of $300 or less. We have seen that this prohibition applies to any person who by any device or pretense of charging for his services, or otherwise, seeks to obtain a greater compensation than is authorized by this act. No loan for which a

charge greater than that allowed by this act has been contracted for or received shall be enforced in this State, and any person in any wise participating therein shall be subject to the provisions of this act. As the borrower obtained the guaranty of the payment of the loan by the guarantor, so that he could obtain the money which he wished to borrow, the guarantor stands upon a similar footing as an usurious lender, and is to be regarded as an oppressor, and the other person, the payment of whose debt he guarantees, as the victim; and where under the statute the guarantor charges more than 8 per cent. per annum for guaranteeing the loan, the person for whom he makes the guaranty can recover the excess of the charge over 8 per cent. The position of the guarantor is so closely related to that of a usurious lender that the principle which permits a borrower to recover usurious interest should be applied to a guarantor who makes a usurious charge for his guaranty. In the case of the usurious lender, he lends his money. In the case of the guarantor, he lends his credit. Both lender and guarantor stand upon a similar footing. If the guarantor makes a charge greater than that permitted by this law, the person for whom the guaranty is made can recover the excess of such charge, just as the borrower can recover usury paid to a lender.

*Judgment affirmed. All the Justices concur.*

No. 7504. JULY 2, 1930. REHEARING DENIED SEPTEMBER 20, 1930.