34724.   RICHARDS *v.* DYE.

Decided December 2, 1953—Rehearing denied December 16, 1953.

O. W. *Roberts, Jr.*, for plaintiff in error.

*Boykin & Boykin*, contra.

FELTON, J. 1. The superior court erred in sustaining the assignment of error in the petition for certiorari upon the allowance, on December 8, 1952, of the same amendment to the suit which had been offered and allowed on March 13, 1951. It appears that the same objections were made to the proffered amendment on each occasion, but the superior court had ruled, on a previous certiorari, that the amendment should not have been allowed over the objections made to it. Upon the reoffer

of this amendment, counsel for the defendant called the court's attention to the prior ruling of the superior court, to which no exception had been taken, and contended that the ruling of the superior court had established the law of the case insofar as the same amendment was concerned. It is true that the ruling on the amendment was the law of the case as to the particular amendment, but it was the law of the case only to the extent of the rulings on the objections made to the amendment, and what the law of the case was must be considered in the light of the objections made to the amendment. There was no objection that the amendment alleged that the note sued on was a renewal of an original note, and that the original note was brought to the plaintiff by Jimmie Dye with Beatrice F. Dye's name thereon appearing as principal, and that the renewal note was also brought to the plaintiff under the same circumstances, and that the defendant allowed her husband to carry the notes to the plaintiff with her name appearing as principal on the notes. The heart of the objections to the amendment was that Jimmie Dye represented that his wife had signed the note as principal, and that such a representation was a statement made out of the presence of the defendant and would not be binding. We think that the only law of the case made by the ruling of the superior court on the amendment was that no express representations made by the husband as to the capacity in which the defendant signed the notes could be proved on the second or subsequent trials. While it was technically error for the city court to allow the identical amendment, it was not harmful to do so in view of the fact that the other parts of the amendment were proper and allowable and that no evidence was introduced in support of that part of the amendment the ruling on which made it the law of the case that no express representations by the husband could be proved. Since it was harmless error to allow the amendment under the circumstances in spite of the law of the case, where the law of the case was not violated in fact or substance, the court erred in reversing the city court judgment on the ground that the allowance of the identical amendment was erroneous and harmful.

2. There is only one important and controlling question in this case, and it is needless to discuss questions on which we all agree and cite authorities to support them. The evidence did

not show that the defendant's husband was, at the time of the execution of the original note, indebted either to the lender, West Georgia National Bank, or to Ford, from whom he was to purchase the Blue & White Service Station. Ford testified that their trade was temporary, and that it was no deal unless Dye raised the money. There is no question as to the wife's assumption of her husband's pre-existing indebtedness. This action is an action on a note by an accommodation indorser who was compelled to pay the note after maturity and who procured a transfer of the note to himself. The action is against one who was the apparent principal on the note by reason of the location of her name on the note. The defendant in her answer asserts one defense, which, if it had been proved, would have authorized a finding for her, and that was that the defendant signed the note as surety and that both the bank, the payee, *and the plaintiff as accommodation indorser,* knew that she signed the note in such capacity. It is doubtful whether the evidence authorized a finding that the bank dealt with the defendant as a surety, but we can assume this for the sake of argument since there is not one bit of evidence, direct or circumstantial, which would have authorized the finding that the plaintiff knew that the defendant signed the note as surety. All the evidence on this subject is that the husband signed the note and the defendant signed it on the front and above the signature of the husband. It was presented to the plaintiff for his signature in that state and nothing was said about the capacity in which the defendant or her husband signed.

The question to be decided is this: Where an accommodation indorser is compelled to pay an obligation after maturity and takes a transfer of the obligation, and sues the maker *on the obligation itself,* does he lose his capacity and identity as an accommodation indorser and become charged with the burdens and infirmities of the transaction chargeable to the payee? The majority think that the accommodation indorser in such a situation is not charged with defenses the maker could urge against the payee, and that, since there was no evidence that the plaintiff knew that the defendant signed as surety, the city court judge correctly directed a verdict for the plaintiff.

In this State an accommodation indorser may sue on the implied promise of the law or on the instrument itself after transfer. *Youmans* v. *Puder,* 13 *Ga. App.* 785 (80 S. E. 34); *Campbell* v.

*Rybert*, 46 *Ga. App.* 461 (1) (167 S. E. 924); *Lamis* v. *Callianos*, 57 *Ga. App.* 238 (2) (194 S. E. 923); In re Seigel, 43 Fed. Supp. 778. It is implicit in some of these decisions, if not expressly indicated, that the transfer of the instrument and action thereon does not rob the accommodation indorser of his capacity and character as such because it would hardly ever be necessary to hold that a transferee of a note, who was not a primary party, could sue on it. See especially *Campbell* v. *Rybert*, supra. This court in *Lamis* v. *Callianos*, supra, stated that the decisions of this State were in conflict on the question whether an accommodation indorser could sue on the instrument, and cited *Jones* v. *Norton*, 9 *Ga. App.* 333 (71 S. E. 687), *Turner* v. *Thompson, Kendrick & Co.*, 23 *Ga.* 49, and *Griffin* v. *Lawton & Willingham*, 54 *Ga.* 105, as cases holding in the negative. The cases do not hold that the indorser may not sue on the instrument except as to the instrument involved in those cases. *Jones* v. *Norton*, supra, is a case where by payment of the obligation before maturity the indorser converted his status to that of a purchaser. *Turner* v. *Thompson, Kendrick & Co.* and *Griffin* v. *Lawton & Willingham*, supra, are cases involving actions by drawees of drafts against the drawer, which were paid by the drawees as an accommodation to the drawer. There the drawer executed the instrument drawn on the drawees, payable to the drawer or his order, and the draft was endorsed by the drawer and the drawees paid the draft to the drawer or for his benefit. In such a case no action lies on the instrument itself. The cases holding that a surety may sue on the instrument mean more than that an indorsee can so sue because to state a fact so obvious as that would in most cases be a useless and superfluous ruling. The cases mean that the surety may sue on the instrument in the capacity of surety and not as a purchaser.

We think that an accommodation indorser who pays off the instrument and takes a transfer occupies the status of a bona fide holder for value, in the absence of guilty notice of defects, rather than the status of a conventional transferee after maturity who was a stranger to the instrument when it was executed. A thorough examination of authorities has revealed no cases holding that an accommodation indorser who pays the indebtedness under compulsion and takes a transfer of the instrument loses his identity and status as an accommodation indorser. An

accommodation indorser or surety becomes bound at the time he signs an instrument; and, if he is compelled to pay it and has it transferred to him, he does not occupy the position of a conventional purchaser for value after maturity. It is true that he does in a sense purchase the paper, but he does so because he was bound to do so. For foreign cases so holding, see Lingo *v.* Swicord, 150 Ark. 384 (234 S. W. 264) (cited in *Lamis* v. *Callianos,* supra); Andrews *v.* Meadow, 133 Ala. 442 (31 So. 971). In Van Brunt *v.* Potter & Co., 2 Pa. Sup. Ct. 591, the court said: "The proposition that an indorser of accommodation paper who has paid it after maturity, upon the maker's default, cannot recover from the maker, for the reason that he does not receive it until after maturity, is utterly without foundation. Such indorser is not a purchaser after maturity. He does not take the note as a purchaser. The contract of an indorser binds him to pay the instrument upon the failure of the maker to meet it at maturity, and it is under this contract that he receives it upon payment. His right to recover against any prior party has its inception in his indorsement, and becomes complete when he has paid the obligation. The rules in relation to a holder by a purchase have no application."

The dissenting opinion in this case treats the plaintiff surety or accommodation indorser as a purchaser or transferree after maturity and holds that he would be bound by the knowledge of the payee bank of the capacity in which the defendant actually signed the note. We can not agree with that conclusion. We see no legal, equitable, or logical reason why a surety should be deprived of his character and rights as surety by obtaining a transfer of the instrument on which he is surety, or why he should be relegated to the status of a purchaser after maturity as if a stranger to the original instrument. The defendant's plea contained allegations necessary to show non-liability, and those were that the bank *and the plaintiff* knew that the defendant signed as surety. Since the plaintiff was not charged with the bank's knowledge, it was incumbent upon the defendant to prove the alleged notice to the plaintiff. There was neither one word of testimony nor any other evidence showing such notice to the plaintiff. The evidence showed that the defendant signed the note in the place where a maker usually signs. Her husband

signed beneath her name. Nothing was said to the plaintiff about the capacity in which the husband and wife signed, and he had a right to assume that they signed as principals. *Howard* v. *Simpkins*, 70 *Ga.* 322; *Strauss* v. *Friend*, 73 *Ga.* 782; *Trammell* v. *Swift Fertilizer Works*, 121 *Ga.* 778 (49 S. E. 739). The plaintiff signed the note as accommodation indorser under the impression that the defendant and her husband were joint makers. It would make no difference if he knew that the husband was to have the exclusive use of the money, since the wife can borrow money and lend it to her husband. The wife indorsed the checks from the bank in this case. It is immaterial that the wife did not consent to the indorsement by the plaintiff. Hoffman *v.* Butler, 105 Ind. 371 (4 N. E. 681). She put it in the power of her husband to procure the plaintiff's indorsement on the strength of her signing as maker. "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." Code § 37-113. The defendant in this case is estopped to deny that she signed the note as maker, since the plaintiff had a right to rely on her apparently having done so. The doctrine of estoppel applies as fully to a married woman as it does to any other person. *Wootten* v. *Braswell*, 48 *Ga. App.* 312 (172 S. E. 679); *Wilson* v. *Cummings*, 196 *Ga.* 17 (25 S. E. 2d 656). The liability of the plaintiff attached at the moment he indorsed for accommodation or as surety and became complete when he paid off the obligation. The fact that the bank could have been found to have knowledge that the wife was not signing as principal, which is assumed but not decided, could not affect the plaintiff's rights as against the defendant.

The judge of the city court correctly directed the verdict and the superior court erred in sustaining the certiorari.

*Judgment reversed. Gardner, P. J., Townsend and Quillian, JJ., concur. Sutton, C. J., and Carlisle, J., dissent.*

SUTTON, C. J., dissenting. 1. The statement of facts appearing before the majority opinion is substantially correct. The superior court did not err in sustaining the assignment of error in the petition for certiorari upon the allowance, on December 8, 1952, of the same amendment to the suit which had been offered and allowed on March 13, 1951. It appears that the same objections were made to the proffered amendment on each occasion,

but the superior court had ruled, on a previous certiorari, that the amendment should not have been allowed over the objections made to it. Upon the reoffer of this amendment, counsel for the defendant called the court's attention to the prior ruling of the superior court, to which no exception had been taken, and contended that the ruling of the superior court had established the law of the case, insofar as the same amendment was concerned. This contention was well taken, and the judge of the city court erred in allowing the amendment when it was offered again on the second trial of the case.

2. The judge of the city court was apparently of the opinion that the evidence demanded a verdict for the plaintiff because the defendant, having admitted a prima facie case for the plaintiff, failed to sustain her defense of suretyship as a married woman by proof, and he accordingly directed a verdict for the plaintiff. The judge of the superior court took the contrary view, and ruled that, if the evidence on the next trial of the case should be substantially the same, a verdict should be directed for the defendant. I think that both of these views are erroneous, and that, upon the evidence as shown by the record, the case should have been submitted to the jury.

Code § 53-503 provides in part that "while the wife may contract, she may not bind her separate estate by any contract of suretyship nor by any assumption of the debts of her husband." The controlling question for determination is whether the defendant was a surety on the note, to the knowledge of the bank at the time the loan was made, or whether she was the principal debtor. A copy of the note is not in the record, as a prima facie case in favor of the plaintiff was admitted, but the evidence shows that Mrs. Dye's name appeared first on the note, her husband's name was next, and then the name of Roy Richards, the plaintiff in this case. So far as the evidence shows, there were no words of description after any of their names, such as "principal" or "security," but all three names appeared on the face of the note in the order just stated.

It was ruled as follows in *Trammell* v. *Swift Fertilizer Works*, 121 *Ga.* 778, 780 (49 S. E. 739): "Where two persons sign a note, apparently as joint principals, and there is nothing in the note to indicate that one is surety for the other, the presumption of law is that both are liable as joint principals. This is not, of course,

a conclusive presumption, but may be rebutted by parol. Civil Code, § 2984 [Code 1933, § 103-306.] It is immaterial in what order the names may appear on the note, if in point of fact one of the makers is liable only as surety. No presumption of law or of fact can arise, in a case where both sign apparently as joint principals, that the person who signed last was surety only."

The headnote opinion in *Tuck* v. *Kellum,* 36 *Ga. App.* 465 (137 S. E. 102), is as follows: "1. Where a married woman signs a note ostensibly as a maker jointly with her husband, when in fact she is a surety only, before she can establish the fact of her suretyship as against the payee of the note it must be made to appear, despite her apparent relationship as principal, that the payee, with knowledge of the facts which would constitute her a surety, contracted with her as a surety. Civil Code (1910), § 3556 [Code 1933, § 103-306]. *Hall* v. *Rogers,* 114 *Ga.* 357 (40 S. E. 250). 2. In a suit against a married woman on a note which she signed ostensibly as a maker jointly with her husband, where she filed a plea of suretyship, and where the only evidence adduced in support of the plea was her own testimony that she received no money or other thing of value from the plaintiff . . . such evidence, in the absence of any evidence tending to show that the payee of the note, at the time of its execution, knew that she received no money or other thing of value, and that therefore the payee contracted with her as a surety, was not sufficient to authorize a finding sustaining the plea, and the court did not err in directing a verdict for the plaintiff." *Trammell* v. *Swift Fertilizer Works,* supra, is cited.

It is also true that, where a note is signed by the wife as principal and by her husband as surety, it is presumed that she executed the note as her own contract, to charge her separate property. *Longley* v. *Bank of Parrott,* 19 *Ga. App.* 701 (1) (92 S. E. 232); *Jones* v. *Weichselbaum,* 115 *Ga.* 369 (41 S. E. 615). This presumption may be rebutted by showing that the lender had notice that the wife was signing the note only as a surety, that the consideration was for the benefit of the husband alone, and that the wife received no part of it. *Temples* v. *Equitable Mortgage Co.,* 100 *Ga.* 503 (28 S. E. 232); *Bozeman* v. *Brock,* 58 *Ga. App.* 816 (200 S. E. 182); *Shepherd* v. *Life & Casualty Ins. Co.,* 71 *Ga. App.* 39 (29 S. E. 2d 917).

The evidence here showed that the defendant's husband

brought to the defendant a cashier's check, which was given by the lender for the note and was payable to Mrs. Dye, the defendant, to Jimmy Dye, and to Roy Richards; and Mrs. Dye endorsed the check and gave it back to her husband to use the proceeds of the check and the note to purchase a filling station, in which she apparently had no interest. But, as to whether or not the lender, to whose rights the plaintiff transferee succeeded, had knowledge of this fact and so contracted with the defendant wife as a surety, was a question of fact for the jury. The only evidence in the present case tending to show such knowledge on the part of the lender was that of the admissions of a deceased cashier of the bank, as testified to by the defendant herself, and these admissions were to the effect that the cashier had let Jimmy Dye, the defendant's husband, borrow the money to pay for the filling station which he was running, and that the cashier had let Dye have the money because Roy Richards's name was on the note. From these admissions, the jury would have been authorized, but not required, to infer that the bank had knowledge that the defendant wife received no part of the consideration of the note, which was for the benefit of the husband alone. Furthermore, in view of the fact that these admissions were made to the defendant after the note became due and was in default, the weight of such admissions as evidence was a matter for the jury to determine. Code § 38-420.

Having paid the amount of the note to the creditor bank, the plaintiff as a surety was entitled to proceed against the principal debtor for the sum paid with interest. Code § 103-302. The plaintiff had an election to proceed as a holder and transferee of the note, in the place of the original payee and transferor and with all of the payee's rights as well as the payee's disabilities, or to bring suit, as a surety who had been called upon to pay and had paid the debt of the principal, on the implied obligation of the principal to reimburse the surety for the amounts so paid. *Lamis* v. *Callianos*, 57 *Ga. App.* 238 (194 S. E. 923); *Jones* v. *Norton*, 9 *Ga. App.* 333, 343 (71 S. E. 687); *Campbell* v. *Rybert*, 46 *Ga. App.* 461 (167 S. E. 924); *Hull* v. *Myers*, 90 *Ga.* 674, 681 (4) (16 S. E. 653).

The plaintiff here sued as the holder and transferee of the note and attached a copy of the note and transfer to his petition as an exhibit and made the same a part thereof. Counsel for both par-

ties state in their briefs in this court that this was a suit on the note, and it seems that the case was accordingly so tried in the trial court. The plaintiff admitted in his petition that the defendant had defaulted in the payment of the note according to its terms, and that the bank had exercised its right to declare the entire amount due, before the note was transferred to the plaintiff. When the bank transferred the note to the plaintiff, he acquired the title thereto, and, by taking the note after maturity, he was not a holder in due course (Code § 14-502); that is to say, the note in his hands under such circumstances was subject to any defense which the defendant might have made to a suit by the original payee and transferor. Code § 14-508. And notice of a defect in the note, or of a defense to it, on the part of the payee, is also notice to a transferee who takes the note after maturity. *Georgia State Bank* v. *Peacock*, 36 *Ga. App.* 159 (136 S. E. 171). If the lending bank had knowledge that the defendant, a married woman, was a surety on the note, the plaintiff, as a holder of the note by a transfer of the note after maturity, was chargeable with notice of this fact too. What the rights of the parties may be in a suit brought upon the surety's right to reimbursement is not now for decision, as the case was not tried on that theory. I do not think that the doctrine of estoppel or the principle as to which of two innocent persons must suffer is applicable under the facts of this case. Neither do I think that the cases of Lingo *v.* Swicord, 150 Ark. 384 (234 S. W. 264), Andrews *v.* Meadow, 133 Ala. 442 (31 So. 971), and Van Brunt *v.* Potter & Co., supra, decided by the Superior Court of Pennsylvania and quoted from in the majority opinion, have any authoritative weight or bearing under the facts of the present case.

The superior court properly sustained the grounds of certiorari complaining of the direction of a verdict for the plaintiff by the city court, since there was an issue of fact as to whether or not the plaintiff's transferor, West Georgia National Bank, had contracted with the defendant married woman as a principal or as a surety; but the superior court erred in instructing the judge of the city court to direct a verdict for the defendant if the evidence should be substantially the same upon another trial of the case.

Judge Carlisle concurs in this dissent.